UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IN RE APPLICATIONS OF
APOSTOLOS MANGOURAS, for                    :          1:17-mc-172 (PKC)
Orders Pursuant to 28 U.S.C. § 1782 to       :
Conduct Discovery for Use in Foreign Proceedings   :
-----------------------------------------------------------------X

### RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO COMPEL COMPLIANCE WITH SUBPOENAS ISSUED *EX PARTE* BY APPLICANT PURSUANT TO 28 U.S.C. § 1782

Victor Genecin (VG9733)

**SQUIRE PATTON BOGGS (US) LLP**
30 Rockefeller Plaza, 23rd floor
New York, NY  10112
(212) 872-9800

*Attorneys for Respondents*
*Squire Patton Boggs (US) LLP,*
*Brian D. Starer, Esq., CR Cushing & Co.,*
*and Charles R. Cushing, Ph.D., P.E.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................... 1

STATEMENT OF FACTS ............................................................................ 1

ARGUMENT ............................................................................................... 6

I.      LEGAL STANDARD ........................................................................ 6

II.     APPLICANT SEEKS PRIVILEGED MATERIAL IN VIOLATION OF § 1782 ........... 7

      A.     Spanish Laws Guaranteeing Professional Secrecy Bar Production Of The Subpoenaed Materials And Testimony ................ 8

      B.     The Work Product Doctrine Under U.S. Law Bars The Requested Discovery, And No Exception Applies ................ 10

      C.     The Attorney-Client Privilege Under U.S. Law Bars The Discovery ................ 14

III.    THE PREREQUISITES OF § 1782 HAVE NOT BEEN MET ................ 16

      A.     Applicant Has Failed To Satisfy The "For Use" Requirement of § 1782 .......... 16

      1.     There Is No Proceeding In Which The Materials Can Be Used ........................ 17

           a.     New Evidence Cannot Be Presented In The ECtHR .............................. 17

           b.     The Requested Discovery Cannot Be Used In A *Querella* ..................... 19

      2.     The Purported Foreign Proceedings Are Not "Within Reasonable Contemplation." ................ 21

      B.     Applicant Has Failed To Establish That Spain (Applicant's Real Target) Is A "Person" That "Resides Or Is Found" In This District. ................ 24

      1.     Spain Is Not A "Person" Within the Meaning Of § 1782 ................ 24

      2.     The Court Cannot Exercise Personal Jurisdiction Over Spain, Which Does Not "Reside" And Is Not "Found" In This District ................ 25

IV.    DISCOVERY SHOULD BE DENIED IN THE SOUND EXERCISE OF THE COURT'S DISCRETION ................ 29

      A.     Spain Has Been And Would Be A Participant In Any Foreign Proceeding ........ 30

      B.     Respondents Have Shown That The ECtHR And The Spanish Courts Would Not Be Receptive To U.S. Judicial Assistance In This Case ................ 31

      C.     Applicant's Failure To Seek The Discovery In Spain Betrays An Attempt To Circumvent Spanish Proof-Gathering Restrictions ................ 33

      D.     The Requested Discovery Seeking Privileged Materials Is Unduly Intrusive And Burdensome, Not Proportional, And Harassing ................ 35

V.     APPLICANT'S SUBPOENAS SHOULD BE DENIED FOR FAILURE TO PROVIDE NOTICE UNDER FEDERAL CIVIL RULE 45 ................ 38

CONCLUSION ................................................................................................ 40

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A. Michael's Piano, Inc. v. F.T.C.*,
   18 F.3d 138 (2d Cir. 1994)...........................................................................................10

*In re Apotex Inc.*,
   2008 U.S. Dist. LEXIS 109420 (S.D.N.Y. Dec. 30, 2008) ........................................29, 35, 37

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
   480 U.S. 102 (1987).......................................................................................................27

*Aventis Pharma v. Wyeth*,
   2009 U.S. Dist. LEXIS 105422 (S.D.N.Y. Nov. 6, 2009) .......................................................33

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)................................................................................................38

*Bristol-Myers Squibb Co. v. Superior Court*,
   198 L. Ed. 2d 395 (2017)..............................................................................................26, 27

*In re Caratube Int'l Oil Co., LLP*,
   730 F. Supp. 2d 101 (D.D.C. 2010) ....................................................................................33

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*,
   2003 U.S. Dist. LEXIS 16887 (S.D.N.Y. Sep. 24, 2003) .......................................................15

*In re Certain Funds, Accounts, and/or Investment Vehicles*,
   2014 U.S. Dist. LEXIS 95578 (S.D.N.Y. July 4, 2014) .................................................. *passim*

*Chevron Corp. v. Donziger*,
   No. 11-0691, 2013 U.S. Dist. LEXIS 55877 (S.D.N.Y. Apr. 12, 2013) .................................13

*Commissioner v. Banks*,
   543 U.S. 426 (2005).........................................................................................................28

*Cootes Drive LLC v. Internet Law Library, Inc.*,
   2002 U.S. Dist. LEXIS 4529 (S.D.N.Y. Mar. 19, 2002) .......................................................39

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014)...................................................................................................26, 28

*Danisco A/S v. Novozymes A/S*,
   427 F. Supp. 2d 443 (S.D.N.Y. 2006).............................................................................11, 12

*Deangelis v. Corzine*,
   2016 U.S. Dist. LEXIS 1856 (S.D.N.Y. Jan. 7, 2016).........................................................9, 15

010-8508-8204/1/AMERICAS

*In re Digitechnic*,
   2007 U.S. Dist. LEXIS 33708 (W.D. Wash. May 8, 2007)..........................................31, 32, 33

*In re Elvis Presley Enterprises, LLC*,
   2016 U.S. Dist. LEXIS 25136 (S.D.N.Y. Mar. 1, 2016) ........................................................38

*Freedman v. Weatherford Int'l Ltd.*,
   2014 U.S. Dist. LEXIS 102248 (S.D.N.Y. July 15, 2014) ...............................................10, 12

*In re Fuhr*,
   2014 U.S. Dist. LEXIS 186812 (S.D.N.Y. Aug. 6, 2014) ....................................................25

*García Ruiz v. Spain*,
   1999-I Eur. Ct. H.R. 87 ................................................................................................18

*In re General Motors LLC Ignition Switch Litig.*,
   2015 U.S. Dist. LEXIS 159721 (S.D.N.Y. Nov. 25, 2015) ...................................................13

*In re Godfrey*,
   526 F. Supp. 2d 417 (S.D.N.Y. 2007) ................................................................................6, 27

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..........................................................................................................26

*In re Grand Jury Subpoena Duces Tecum*,
   731 F.2d 1032 (2d Cir. 1984)...........................................................................................11

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014)..........................................................................................25, 27

*In re Harbour Victoria Investment Holdings Ltd.*,
   2015 U.S. Dist. LEXIS 87912 (S.D.N.Y. June 29, 2015).....................................................38

*In re Hornbeam Corp.*,
   2015 U.S. Dist. LEXIS 142361 (S.D.N.Y. Sept. 17, 2014)...................................................39

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004).............................................................................................. *passim*

*Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015)..........................................................................................17, 21

*Jiangsu S.S. Co. v. Success Superior Ltd.*,
   2015 U.S. Dist. LEXIS 18388 (S.D.N.Y. Jan 5, 2015)........................................................23

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
   2015 U.S. Dist. LEXIS 111903 (S.D.N.Y. Aug. 17, 2015)...................................................29

iii

*Kashlev v. Estonia*,
    2016 Eur. Ct. H.R. 389 ...........................................................................................18

*In re Kreke Immobilien KG*,
    2013 U.S. Dist. LEXIS 160283 (S.D.N.Y. Nov. 8, 2013) .................................................33, 34

*Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*,
    248 F.R.D. 126 (S.D.N.Y. 2007) ...........................................................................12

*MacNamara v. City of New York*,
    2008 U.S. Dist. LEXIS 3937 (S.D.N.Y. Jan. 18, 2008)........................................................12

*In re Marc Rich*,
    707 F.2d 663 (2d Cir. 1983)........................................................................................25, 28

*In re Mare Shipping Inc.*,
    No. 13 Misc. 238, 2013 U.S. Dist. LEXIS 152337 (S.D.N.Y. Oct. 23, 2013) ............... *passim*

*Mare Shipping Inc. v. Squire Sanders (US) LLP*,
    574 Fed. Appx. 6 (2d Cir. 2014) .......................................................................................2, 16

*Martin v. Valley Nat'l Bank*,
    140 F.R.D. 291 (S.D.N.Y. 1991) ....................................................................................28

*Martinez v. Kleinfeld Bridal Corp.*,
    2017 U.S. Dist. LEXIS 103261 (S.D.N.Y. June 30, 2017)......................................................10

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006)..............................................................................7, 31, 35

*Mirra v. Jordan*,
    2014 U.S. Dist. LEXIS 77065 (S.D.N.Y. May 28, 2014)......................................................39

*Motorola Credit Corp. v. Uzan*,
    132 F. Supp. 3d 518, 520 (S.D.N.Y. 2015).........................................................................26

*In re MT "Baltic Soul" Produktentankschiff-Ahrtsgesellschaft MBH & Co. KG*,
    2015 U.S. Dist. LEXIS 136080 (S.D.N.Y. Oct. 6, 2015) ......................................................38

*Nascimento v. Faria*,
    600 F. App'x 811 (2d Cir. 2015) .......................................................................................32

*In re Nokia Corp.*,
    2013 U.S. Dist. LEXIS 160733 (N.D. Cal. Nov. 8, 2013).....................................................29

*Obeid v. La Mack*,
    2015 U.S. Dist. LEXIS 127327 (S.D.N.Y. Sep. 16, 2015).....................................................9

010-8508-8204/1/AMERICAS

*In re Okean B.V.*,
    60 F. Supp. 3d 419, 428 (S.D.N.Y. 2014) ..................................................... *passim*

*In re Passport Special Opportunities Master Fund*,
    2016 U.S. Dist. LEXIS 25657 (S.D.N.Y. Mar. 1, 2016) .........................................38

*In re Request for Assistance from Ministry of Legal Affairs*,
    848 F.2d 1151 (11th Cir. 1988) ..............................................................38

*In re Richard Roe, Inc.*,
    168 F.3d 69 (2d Cir. 1999)..................................................................12

*Roseman v. Bloomberg L.P.*,
    2016 U.S. Dist. LEXIS 89595 (S.D.N.Y. June 17, 2016)........................................9

*Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*,
    91 N.Y.2d 30 (N.Y. 1997) ..................................................................28

*In re Sealed Case*,
    832 F.2d 1268 (D.C. Cir. 1987)..............................................................28

*Shaub & Williams, L.L.P. v. Augme Techs., Inc.*,
    2014 U.S. Dist. LEXIS 34438 (S.D.N.Y. Mar. 17, 2014) ......................................10

*In re Sumar*,
    123 F.R.D. 467 (S.D.N.Y. 1988) ............................................................16

*Thai-Lo Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*,
    2012 U.S. Dist. LEXIS 37915 (S.D.N.Y. Mar. 20, 2012) .....................................24

*U.S. v. Kovel*,
    296 F.2d 918 (2d Cir. 1961)................................................................14

*Estate of Ungar v. Palestinian Auth.*,
    412 F. Supp. 2d 328 (S.D.N.Y. Jan 5, 2006) .................................................28

*United States v. Jacobs*,
    117 F.3d 82 (2d Cir. 1997)..............................................................10, 12

*Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*,
    2017 U.S. Dist. LEXIS 57370 (N.D. Ind. 2017)...............................................14

*In re WinNet R CJSC*,
    2017 U.S. Dist. LEXIS 56985 (S.D.N.Y. Apr. 17, 2017)....................................37, 38

*In re XPO Logistics, Inc.*,
    2017 U.S. Dist. LEXIS 77426 (S.D.N.Y. May 22, 2017)........................................37

**STATUTES**

28 U.S.C. § 1782 ................................................................................................... *passim*

**OTHER AUTHORITIES**

European Court of Human Rights, Pracical Guide on Admissibility Criteria 83 (2014) .............19

Fed. R. Civ. P. 26 ................................................................................................... *passim*

Fed. R. Civ. P. 45 ...................................................................................................39

## PRELIMINARY STATEMENT

Respondents Squire Patton Boggs (US) LLP ("Squire") and Brian D. Starer, Esq. ("Mr. Starer") (together, the "Squire Respondents") and Charles R. Cushing, Ph.D., P.E. ("Dr. Cushing") and C.R. Cushing & Co., Inc. (together, the "Cushing Respondents") respectfully submit this memorandum in opposition to the motions of Apostolos Mangouras ("Applicant") to compel compliance with subpoenas issued *ex parte* pursuant to 28 U.S.C. § 1782.[1]

## STATEMENT OF FACTS

On October 22, 2013, this Court denied Applicant's motion to compel compliance with subpoenas directed to the Squire Respondents and Holland & Knight, L.L.P. ("H&K"), Mr. Starer's former law firm.  *See In re Mare Shipping Inc.,* No. 13 Misc. 238, 2013 U.S. Dist. LEXIS 152337 (S.D.N.Y. Oct. 23, 2013).  Those subpoenas sought documents and testimony concerning legal representation provided by the Squire Respondents and H&K to the Administration of the Spanish State, *i.e.*, the Legal Service of the Kingdom of Spain (hereinafter "Spain" or the "Spanish Government") in two matters that arose from the wreck of the oil-tanker *Prestige*: (1) a lawsuit in this District, *Reino de España v. The American Bureau of Shipping, Inc.*, Case No. 03 Civ. 3573 (LTS)(RLE) (the "New York action"); and, (2) the development of evidence for the combined criminal and civil case brought by Spain and other public and private parties against Applicant and numerous other defendants in A Coruña, Spain (the "Spanish action" or "Spanish trial").  *See id.*

This Court concluded that Spain was, "'for all intents and purposes,' the real subject of the subpoena," and that the Applicant appeared "to attempt to circumvent Spanish proof-

---

[1]   On July 13, 2017, the Court consolidated Applicant's two actions, filed under Case Nos. 1:17-mc-172 and 1:17-mc-186, under Case No. 1:17-mc-172.  *See* Case No. 1:17-mc-172, ECF No. 34.

1

gathering restrictions by seeking documents and deposition testimony here, rather than in Spain." *In re Mare Shipping Inc.*, 2013 U.S. Dist. LEXIS 152337, at *14 (internal citation omitted). The Court's decision was affirmed by the Court of Appeals. *See Mare Shipping Inc. v. Squire Sanders (US) LLP,* 574 Fed. Appx. 6 (2d Cir. 2014).

Applicant now seeks to compel the Squire Respondents to comply with subpoenas that seek exactly the same documents and testimony that he sought in 2013, based on an Application that is, in the main, a "block-and-copy" reproduction of his 2013 Application. The only supporting documents filed with the new Application concerning the Squire Respondents are copies of two of the Declarations of Spanish counsel that Applicant filed in 2013.[2] In support of the Application for discovery from the Cushing Respondents, Applicant filed a Declaration by a Spanish lawyer named María José Rodríguez Docampo dated June 6, 2017 (ECF No. 14-4 in Case No. 1:17-mc-186) ("Docampo June 6, 2017 Decl."). Applicant filed a second Declaration by Ms. Rodríguez Docampo, dated June 23, 2017 (ECF No. 27 in Case No. 1:17-mc-172) ("Docampo June 23, 2017 Decl."), in support of his motion to compel compliance by the Squire Respondents.

The documents and testimony sought by Applicant are all the property of Spain, as they concern the legal representation provided by the Squire Respondents, as Spain's lawyers, and the expert testimony of Dr. Cushing, a naval architect who was retained as an expert witness by the Squire Respondents. Hon. Luis Serrano, Deputy Director of Litigation for the Spanish Government State Attorney's Office, has written to the Court to request that

---

[2] These are the *Supplemental Declaration of José Maria Ruiz Soroa dated August 23, 2013* ("Ruiz Soroa Supp. Decl.")*,* filed in Case No. 1:17-mc-172 as ECF No. 28-1 and in Case No. 1:13-mc-238 as ECF No. 29, and the *Supplemental Declaration of Santiago Zabaleta dated July 22, 2013* ("Zabaleta Decl."), filed in Case No. 1:17-mc-172 at ECF No. 3 (Exhibit 6) and in Case No. 1:13-mc-238 as ECF No. 27.

2

the Applications and motions to compel be denied pursuant to Spanish laws governing professional secrecy which, *inter alia*, would render any evidence obtained through the instant proceedings inadmissible in any proceeding in Spain.  *See* July 24, 2017 Letter of Luis Gonzaga Serrano de Toledo ("Serrano Letter") at § 13.[3]

The facts of the 2013 Application are well known to this Court, and are fully documented in the record of that matter.  For present purposes, therefore, we believe it sufficient to note that, in 2013, as now, Applicant alleges that: (1) the declaration of Captain Efstratios Kostazos in the New York action was false and contrary to his testimony in the Spanish trial; (2) the Squire Respondents coerced George Alevizos to serve as a paid expert in the New York action by threatening him with prosecution in Spain; and (3) the declaration of Jens Jorgen Thuesen in the New York action was based on misleading documents provided to him by the Squire Respondents.  *See In re Mare Shipping*, 2013 U.S. Dist. LEXIS 152337 at *2-*3; *compare* Case No. 1:17-mc-172, ECF No. 2, Mem. In Supp. at 11-21, *with* Case No. 1:13-mc-238, ECF No. 2, *Mem. in Supp.* at 10-20.   The Squire Respondents refute those allegations, as they did in 2013.  *In re Mare Shipping*, 2013 U.S. Dist. LEXIS 152337 at *3.  Applicant admitted in 2013 that the allegedly false declarations were available to his Spanish lawyers, who were able to use them to cross-examine the witnesses during the Spanish trial.  *Id.*  As this Court observed:

> The Applicants had the opportunity to cross-examine the witnesses in question with the allegedly false declarations during the trial held in Spain, which has since concluded. Additionally, the Applicants did not seek the now-sought evidence from the Court in the evidence-gathering period or during the course of the trial. Applicants argue that their attorneys did not request this evidence because of the "certain outcome of such a request," as prior requests for evidence and documents

---

[3] The original Serrano Letter, in Spanish, is annexed to the Declaration of Victor Genecin dated July 26, 2017 ("Genecin Decl.") as Exhibit A; a certified translation is annexed to the Declaration of Cathleen Waters ("Waters Decl.") as Exhibit A.

from the New York action were denied by the Spanish court.  (Rep. Mem. 14; Ruiz Soroa Supp. Decl. ¶5.)  Respondent Starer, who is a partner in Respondent Squire Sanders LLP, was physically present in the Spanish courtroom and Applicants did not seek Mr. Starer's testimony in Spain.

*Id.* at *12-13.

In 2013, Applicant initially claimed he needed the subject evidence from the Squire Respondents for use in the trial in A Coruña.  *See* Case No. 1:17-mc-238, ECF No. 1, Ex Parte Application.  After Respondents demonstrated that the record in that trial was closed, *see* Case No. 1:17-mc-238, ECF Nos. 7-8, Objections at 5, Appellant claimed, falsely, that the evidence he sought would be admissible on appeal.  *See* Case No. 1:17-mc-238, ECF No. 2, Mem. In Supp. at 24.  When Respondents showed that new proof is not taken in appeals before the Spanish courts, *see* Case No. 1:17-mc-238, ECF No. 25, Mem. In Opp. at 2-3,[4]  Appellant asserted that he was going to need the evidence when he brought proceedings before the European Court of Human Rights (the "ECtHR"), or in a *Querella Criminal* proceeding in Spain (a "*Querella*").  *See* Case No. 1:17-mc-238, ECF No. 26, Reply Mem. at 3-4.  But four years after he claimed in this Court (*see id.*) and in the Court of Appeals (*see* Case No. 13-4426, ECF No. 8, Mem. In Supp. of Motion to Expedite) that the discovery at issue was needed urgently for ECtHR proceedings and a *Querella*, Applicant has still not filed either case.

In the interim, on November 13, 2013, judgment was entered by the Audiencia Provincial in A Coruña, Spain.  *See* July 25, 2017 Declaration of Javier Suárez García ("Suárez Decl.") (Waters Decl. Ex. C) ¶ 14; Genecin Decl. Ex. F (Official Translation of Audiencia Provincial Decision of November 13, 2013).  On January 14, 2016, the Spanish

---

[4] Respondents submitted, among other evidence, a Declaration of Javier Suárez García dated September 12, 2013, in Spanish (Case No. 13-mc-238, ECF No. 37-1) (Genecin Decl. Ex. E-1), with certified translation (Case No. 13-mc-238, ECF No. 38-1) (Genecin Decl. Ex. E-2).

Supreme Court issued a judgment holding that Applicant was guilty of a crime against the environment, with the aggravating circumstance of catastrophic damage. *See* Serrano Letter at § 2. The Spanish Supreme Court also held that Applicant, the London Steamship Owners Mutual Insurance Association, and Mare Shipping Inc. (the owner of the Prestige) were civilly liable. *Id.* Notably, the Spanish Supreme Court's statement of the legal grounds for Applicant's conviction adopted, as it was required to do under Spanish law, the Audiencia Provincial's findings that "the damage that caused the collapse of the ship was not foreseeable, nor could the accused have warned of it," and that "the structural condition of the ship could only be known through rigorous inspection for which responsibility is attributed to the classification society," and not to Applicant. Genecin Decl. Ex. D (Supreme Court Decision of January 14, 2016 with certified translation); *see* Declaration of Professor Íñigo Ortiz de Urbina Gimeno ("Ortiz Decl.") (Waters Decl. Ex. B). Accordingly, the judgment convicting Applicant was based on proof of matters other than Applicant's knowledge of the condition of the ship, and had nothing to do with the testimony of Messrs. Kostazos, Alevizos, and Thuesen, *see* Ortiz Decl. ¶ 17 ("neither of the two Spanish courts that have considered this matter have found any of the facts based on the witness statements of Efstratios Kostazos, George Alevizos and Jens Jorgen Thuesen to have been proven"), or with the expert testimony of Dr. Cushing, *id.*, *see also* July 19, 2017 Declaration of Dr. Cushing ("Cushing Decl.") (Genecin Decl. Ex. G) ¶ 2.

The Applications should be denied.

## ARGUMENT

### I.    LEGAL STANDARD.

Under § 1782, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  28 U.S.C. § 1782(a); *see also In re Okean B.V.*, 60 F. Supp. 3d 419, 428 (S.D.N.Y. 2014).

An applicant seeking discovery pursuant to § 1782 also must establish that:

(1)    the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made,

(2)    the discovery is for use in a foreign proceeding before a foreign tribunal, and

(3)    the application is made by a foreign or international tribunal or any interested person.

*In re Mare Shipping Inc.*, 2013 U.S. Dist. LEXIS 152337, at *6 (citing *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004)).

Even if the applicant satisfies these statutory requirements of § 1782, the district court must then consider whether, and to what extent, it is "appropriate" to grant the discovery request. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  This inquiry is guided by the "*Intel* factors," which include:

(1)    whether "the person from whom discovery is sought is a participant in the foreign proceeding," and therefore, subject to the foreign tribunal's jurisdiction;

(2)    the "character of the proceedings underway abroad," and the receptivity of the foreign tribunal to U.S. court assistance;

(3)    whether the § 1782 application is an attempt to "circumvent foreign proof-gathering restrictions"; and

(4)    whether the documents and testimony sought are "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264-65 (a "district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so").

Applicant must bear the burden of demonstrating his entitlement to discovery under § 1782. *See In re Godfrey*, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007).

## II.    APPLICANT SEEKS PRIVILEGED MATERIAL IN VIOLATION OF § 1782.

The Supreme Court has "count[ed] it significant" that § 1782 "expressly shields privileged material." *Intel*, 542 U.S. at 260 (citing S. Rep. No. 88-1580, reprinted at 1964 U.S.C.C.A.N. 3782, 3790 ("[N]o person shall be required under the provisions of [§ 1782] to produce any evidence in violation of an applicable privilege.")).

Section 1782 protects evidence that is privileged under foreign law, *see Intel*, 542 U.S. at 259-60,[5] as well as under U.S. law, *see In re Microsoft Corp.*, 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006).   A district court must deny a motion to compel if "any legally applicable privilege" applies. *See In re Okean*, 60 F. Supp. 3d at 423 (subpoena under § 1782 may "yield only non-privileged documents in the law firm's possession").

As demonstrated below, Applicant's motions to compel should be denied because his § 1782 applications are barred by (1) Spanish laws that absolutely guarantee professional secrecy, (2) the work product doctrine, and (3) the attorney-client privilege.

---

[5] *See also* S. Rep. No. 88-1580 at 3790 (the "considerably broad[]" language of § 1782(a) "provides for the recognition of all privileges to which the person may be entitled, including privileges recognized by foreign law"); *In re Okean*, 60 F. Supp. 3d at 426 ("Russian and Ukrainian laws relied on by [law firm respondent] do in fact apply to the § 1782 application, and . . . these laws reinforce the prohibition that U.S. law already imposes as to the production of privileged materials of nonwaiving parties.").

A.      **Spanish Laws Guaranteeing Professional Secrecy Bar Production Of The Subpoenaed Materials And Testimony.**

Spanish professional secrecy law compels denial of Applicant's § 1782 discovery.  The materials responsive to Applicant's subpoenas fall squarely within the scope of the Spanish professional secrecy laws, which impose professional secrecy on attorneys and their files.

The Spanish Constitution and the Courts of Spain have declared professional secrecy to be a fundamental right that requires lawyers to maintain secrecy with respect to any information received in the course of their representation of clients, and that protects their ability to do so. *See* Ortiz Decl. ¶¶ 37-53; Serrano Letter §§ 7-11; Suárez Decl. § 7.  Respondents could face criminal proceedings in Spain were they to disclose the documents and information that Applicant seeks.  *See* Ortiz Decl. ¶ 55; Serrano Letter § 10.

If obtained through the instant proceedings, moreover, the information sought could not be used by Applicant in any Spanish proceeding, as evidence obtained in violation of Spain's professional secrecy laws is categorically inadmissible before the Spanish courts, including in a *Querella*.  *See* Ortiz Decl. ¶ 57 ("Production of documents in the USA, and the presentation of the documents that have been sought in a criminal proceeding in Spain, would violate the professional secrecy obligations of Spain's Lawyers and would not be admissible into evidence, as they would have been produced and provided without the procedural guarantees that Spanish law requires.") (citing and confirming Suárez Decl. at § 4).  Thus, not only do the Spanish professional secrecy laws impose obligations on counsel, they impose material limitations on the use of such evidence by judicial tribunals.  Ortiz Decl. ¶¶ 54-57.  Allowing the requested discovery in this case not only would be burdensome, it would offend Spanish law.  *See In re Okean*, 60 F. Supp. 3d at 428 ("[T]he documents [sought] are attorney-client communications protected under [foreign] client confidentiality and personal data privacy laws. . . . [P]roduction

8

of these materials to [applicant] for use in the [foreign] litigation would not only be burdensome; it would offend core tenets of our legal system (and those of [the foreign countries]) . . . .").

To support his requests for § 1782 discovery, Applicant relies on the four-year old Supplemental Declaration of José Maria Ruiz Soroa, and on the June 23, 2017 Declaration of Maria José Rodriguez Docampo.  *See* Memorandum of Law in Support of Applicant's Motion to Compel (ECF No. 29 in S.D.N.Y. Case No. 17-mc-172) ("App. Memo re: Squire") at 2; Memorandum of Law in Support of Applicant's Motion to Compel (ECF No. 15 in S.D.N.Y. Case No. 17-mc-186) ("App. Memo re: Cushing") at 1.  The Declarations proffered by Applicant provide no basis on which the Court might conclude that the disclosures sought here do not violate Spanish professional secrecy laws.  Respondents, by contrast, have submitted the Declaration of Professor Ortiz, who affirms that the Spanish laws governing professional secrecy prohibit the use of the requested § 1782 discovery.  Professor Ortiz cites authorities establishing that Spanish professional secrecy law also applies to communications with experts retained in connection with judicial proceedings.  *See* Ortiz Decl. ¶¶ 48-53; *see also* Serrano Letter § 9 ("Professional secrecy . . . . also extends to anyone working with the attorneys in their professional activity.").

In the absence of any showing that the protections of Spanish professional secrecy laws do not apply to the evidence sought, Applicant's motions to compel should be denied.  *See In re Okean*, 60 F. Supp. 3d at 429 (denying § 1782 discovery because the applicant did not claim "that an analog to the American crime-fraud exception actually exists so as to limit the reach of [foreign] confidentiality and privacy laws," nor did the applicant "submit a declaration to this effect from an expert on such laws," while the respondent law firm, "by contrast, put forward the

declaration of a knowledgeable expert to establish the existence of the relevant [foreign] laws and their application to this case.").

### B.    The Work Product Doctrine Under U.S. Law Bars The Requested Discovery, And No Exception Applies.

Applicant's subpoenas also seek materials that are protected from disclosure by the work product doctrine.  Applicant relatedly seeks discovery of certain materials from Dr. Cushing that are protected from disclosure under Federal Civil Rule 26(b)(4)(B) and (C).  *See Deangelis v. Corzine*, 2016 U.S. Dist. LEXIS 1856, at *30 (S.D.N.Y. Jan. 7, 2016).

Federal common law governs the attorney work product doctrine.  *See Obeid v. La Mack*, 2015 U.S. Dist. LEXIS 127327, at *7 n.2 (S.D.N.Y. Sep. 16, 2015).  The doctrine protects materials prepared in anticipation of litigation by or for a party at counsel's behest.  *See Roseman v. Bloomberg L.P.*, 2016 U.S. Dist. LEXIS 89595, at *19 (S.D.N.Y. June 17, 2016) (citing *In re Grand Jury Subpoenas*, 318 F.3d 379, 383 (2d Cir. 2003); Fed Civ. P. Rule 26(b)(3)).  This includes tangible things (e.g., interviews, statements, memoranda, correspondence, briefs), and intangible things (e.g., the attorney's thoughts and recollections).  *See A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 146 (2d Cir. 1994).

Here, Applicant concedes that the documents he seeks are protected as work product because they were prepared in anticipation of litigation or trial.  *See* App. Memo re: Squire at 19-21.  Applicant argues that the crime-fraud exception applies, but he has failed to satisfy his heavy burden of establishing this exception.[6]

---

[6] Applicant also suggests that his "substantial need" and inability to obtain the equivalent material elsewhere without "undue hardship" should overcome the work product doctrine.  App. Mem. re Squire (ECF No. 29) at 20.  Applicant, however, cannot use the requested discovery in the foreign proceedings he has identified, nor is there "undue hardship."  Applicant could have obtained, and could still obtain, the materials he seeks from the Spanish courts.  *See Martinez v. Kleinfeld Bridal Corp.*, 2017 U.S. Dist. LEXIS 103261, at *7 (S.D.N.Y. June 30, 2017); *Shaub*

10

To establish that Spain's work product materials are subject to disclosure under the crime-fraud exception, Applicant must demonstrate that: (1) "there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed," *and* (2) "that the communications in question were in furtherance of the fraud or crime." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997). The probable cause determination requires "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *In re Okean*, 60 F. Supp. 3d at 430 (quoting *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994)). The burden of demonstrating probable cause rests on the party invoking the exception. *See Freedman v. Weatherford Int'l Ltd.*, 2014 U.S. Dist. LEXIS 102248, at *18 (S.D.N.Y. July 15, 2014) (citation omitted); *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1039 (2d Cir. 1984).

Applicant's U.S. and Spanish lawyers do not purport to have knowledge of any alleged crime or fraud by Respondents. To the contrary, Applicant's New York counsel admitted long ago that his client does not know whether he can rely on any of his own assertions:

> [T]he crime fraud exception comes into play. And we say that the crime – that it is, in the first instance, a crime to perjure oneself. It is a crime to promote perjurious testimony by an attorney, that suborning perjury is a crime . . . I shouldn't say 'perjure himself.' ***We don't know what was true or what wasn't true.***

July 22, 2013 Hearing Transcript (ECF No. 20 in No. 13-mc-238) at 8:11-22 (emphasis added).

In her June 23, 2017 Declaration, Ms. Docampo, Applicant's Spanish counsel, betrays the speculative nature of Applicant's allegations. She asserts that Applicant seeks discovery from the Squire Respondents because a *Querella* may not proceed on the basis of mere suspicions. *See* Docampo June 23, 2017 Decl. ¶ 10 ("[T]he formalization of a '*querella*' must be

---

*& Williams, L.L.P. v. Augme Techs., Inc.*, 2014 U.S. Dist. LEXIS 34438, at *16 (S.D.N.Y. Mar. 17, 2014); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 80 (S.D.N.Y. 2010).

done on the basis of the existence of facts which, if true, are considered a crime and not on the suspicion of the existence of such facts."). Indeed, Applicant's Spanish counsel expresses concern that Applicant could be charged with the Spanish offense of "false complaint" were he to pursue a *Querella* without the requested discovery. *Id.* Albeit based on a misunderstanding of Spanish procedure, *see* Ortiz Decl. ¶¶ 88-90, these assertions further confirm that Applicant's requests for judicial assistance are predicated on the mere hope that he might find evidence of a crime or fraud. Speculative allegations cannot establish the necessary probable cause for the crime-fraud exception. *See Danisco A/S*, 427 F. Supp. 2d at 445.

Nor is Applicant's burden satisfied when the documents sought are "factual materials" such as "summaries from investigations": "such documents are not the type that facilitate or further fraudulent conduct; at most, they would potentially provide evidence of a fraud," and "[t]his is insufficient to trigger to crime-fraud waiver." *Freedman*, 2014 U.S. Dist. LEXIS 102248, at *18.

It is well established that "the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud." *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 154 (S.D.N.Y. 2007) (citations omitted). To the contrary, "the crime-fraud exception applies only where there is probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity." *Id.*; *see also Jacobs*, 117 F.3d at 88 ("To subject the attorney-client communications to disclosure, they must actually *have been made with an intent to further an unlawful act*.") (emphasis in original).

The crime-fraud exception "has a narrow and precise application." *MacNamara v. City of New York*, 2008 U.S. Dist. LEXIS 3937, at *10 (S.D.N.Y. Jan. 18, 2008) (quoting *Jacobs*, 117

12

F.3d at 88).  It is "not to be lightly cast aside based on speculative allegations."  *Danisco A/S v. Novozymes A/S*, 427 F. Supp. 2d 443, 445 (S.D.N.Y. 2006); *see also In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) ("Given that the attorney-client privilege and work product immunity play a critical role in our judicial system, the limited exceptions to them [including the crime-fraud exception] should not be framed so broadly as to vitiate much of the protection they afford.") (internal citations omitted).

Here, Applicant has not established probable cause to believe that a crime or fraud has occurred.  Applicant also has not explained, much less produced evidence to show, that Respondents' communications and work product furthered the alleged crime or fraud in any way.  This is not surprising given that many of the documents sought by Applicant are "notes, memoranda, time records, bill and other billing records" connected to the *Prestige* investigation, *see* App. Memo re: Squire at 8-9, not the types of documents that facilitate fraudulent conduct.

Applicant also claims to find support in *Chevron Corp. v. Donziger*, No. 11-0691, 2013 U.S. Dist. LEXIS 55877 (S.D.N.Y. Apr. 12, 2013), but that opinion undercuts his argument.  In *Chevron*, the Court had already made specific, detailed, factual findings.  *Id*. at \*31-32.  In this case, Applicant has presented no evidence to support a finding of probable cause.

Applicant's motions to compel should be denied because Applicant has failed to establish that *any* – let alone all – of the otherwise privileged documents responsive to his subpoenas would be subject to disclosure under the narrow and strictly construed crime-fraud exception.  *See In re Okean*, 60 F. Supp. 3d at 432; *In re General Motors LLC Ignition Switch Litig.*, 2015 U.S. Dist. LEXIS 159721, at \*141 (S.D.N.Y. Nov. 25, 2015).

### C.      The Attorney-Client Privilege Under U.S. Law Bars The Discovery.

Applicant also seeks communications by or with Dr. Cushing concerning his work for Spain in the New York litigation and in the Spanish proceedings, including "copies of his notes from [any] meeting he had with Spanish officials regarding the wreck." *See* App. Memo re: Cushing at 4. The communications that Dr. Cushing had with either Mr. Starer or the Spanish Government are privileged from disclosure.

The attorney-client privilege attaches to communications between a client and an attorney's agent if the communication involves the subject matter about which the attorney was consulted and the agent was retained by the attorney to assist in rendering legal advice to or conducting litigation on behalf of the client. *See U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961). The privilege extends to "technical experts." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010); *see also Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, 2017 U.S. Dist. LEXIS 57370, at *14-15 (N.D. Ind. 2017) ("Just as communications made directly between an attorney and his or her client are privileged, so too are communications between attorneys and the experts or investigators they hire on behalf of a client, as well as communications between agents of the client and agents the attorney hires on behalf of a client.").

Dr. Cushing was retained by Mr. Starer to assist him in rendering legal advice and in conducting litigation on behalf of Spain. *See* Cushing Decl. ¶ 2. Under § 1782, therefore, the attorney-client privilege precludes the discovery requested by Applicant. Applicant argues, however, that the requested discovery falls within exceptions "ii" or "iii" to Federal Rule

26(b)(4)(C).   *See* App. Memo re: Cushing (ECF No. 15 in 17-mc-186) at 20-21.   These exceptions are inapplicable.[7]

The exception created by Rule 26(b)(4)(C)(ii) "applies only to communications 'identifying' the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected."  Fed. R. Civ. P. 26, Advisory Committee Note to the 2010 Amendment.   The scope of Rule 26(b)(4)(C)(iii) is also narrowly construed: "This exception is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed.   More general attorney-expert discussions about hypotheticals, or exploring possibilities based on hypothetical facts, are outside this exception."  *Id.*  Thus, "Rule 26 does not tolerate discovery requests 'based on pure speculation or conjecture'" and "does not mandate the disclosure of any additional reports that the expert may have prepared."  *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 2003 U.S. Dist. LEXIS 16887, at *8-9 (S.D.N.Y. Sep. 24, 2003) ("Plaintiffs' expectation that the previous reports will shed light on [the expert]'s credibility or the weight that should be attributed to his report is simply too speculative to warrant a broader reading of the rule.") (internal citation omitted).

Rules 26(b)(4)(C)(ii) and (iii), moreover, do not permit discovery of "drafts of any reports" prepared by a testifying expert.   Such documents are protected under Federal Rule 26(b)(4)(B), which does not provide any exception to the work product doctrine.   "Notes, summaries, memoranda, and other materials created by an expert or the expert's assistants in connection with drafting a[n] expert report" qualify as draft expert reports protected by Fed. R. Civ. P. 26(b)(4)(B).  *Deangelis*, 2016 U.S. Dist. LEXIS 1856, at *34.

---

[7] Applicant does not argue that the crime-fraud exception applies to the discovery sought from the Cushing Respondents.  *See* App. Memo re: Cushing (ECF No. 15 in 17-mc-186) at 18-23.

In disregard of these limitations, Applicant seeks information that Dr. Cushing may have obtained from the Spanish authorities.  Indeed, Applicant requests "notes from this (and any other) meeting that [Dr. Cushing] had with Spanish officials," as well as "any documents that Dr. Cushing may hold" or that "he may have received" relating to thickness measurements.  App. Memo re: Cushing at 4-5.  Both Applicant's uncertainty and the fact that he seeks documents that originated from sources other than Mr. Starer and his law firm prevent him from invoking exceptions "ii" and "iii" to Federal Civil Rule 26(b)(4)(C).  In addition, these exceptions are inapplicable to any notes taken by Dr. Cushing or his assistants in connection with drafting his expert report.  Such documents constitute draft reports that are privileged under Federal Civil Rule 26(b)(4)(B) and not discoverable under § 1782.

## III.   THE PREREQUISITES OF § 1782 HAVE NOT BEEN MET.

Applicant's motions to compel also should be denied because the statutory prerequisites of § 1782 have not been met:  The Court lacks subject-matter and personal jurisdiction because: (1) the discovery sought is not "for use in a proceeding in a foreign or international tribunal," and (2) the discovery is not sought from "a person" that "resides or is found" in this district.[8]

### A.   Applicant Has Failed To Satisfy The "For Use" Requirement Of § 1782.

Applicant has not established that he seeks discovery "for use in a proceeding in a foreign or international tribunal."   28 U.S.C. § 1782(a).   This statutory requirement must be

---

[8] Applicant blatantly mischaracterizes the Second Circuit's Order affirming this Court's complete denial of his 2013 application.  That Order nowhere states that this Court would be barred from considering the prerequisites to obtaining § 1782 relief if Applicant were to file a renewed application.  To the contrary, the Order states that this Court properly denied Applicant's requested discovery "for other reasons" and thus "had no occasion to evaluate the fourth *Intel* factor, examining whether the request was overly burdensome."  *Mare Shipping*, 574 Fed. Appx. at 9.  The Second Circuit clearly did not excuse Applicant from satisfying the requirements of § 1782 in a renewed application.  Applicant tacitly recognizes as much:  he devotes virtually his entire legal analysis to arguing that he now meets the mandatory and discretionary requirements of § 1782.

"demonstrated with sufficient clarify" for the Court to exercise "subject-matter jurisdiction under 28 U.S.C. § 1782." *In re Sumar*, 123 F.R.D. 467, 471 (S.D.N.Y. 1988).

First, as conclusively demonstrated below, any documents or testimony Applicant were to obtain pursuant to the instant proceedings cannot, as a matter of law, be admitted in evidence in either the ECtHR or in a *Querella*.[9]  Second, Applicant's motions to compel should be denied because Applicant concedes he has not yet commenced any action in Spain or the ECtHR, and his counsel's representation that such proceedings are forthcoming is too speculative to warrant discovery.  Indeed, given that the requested discovery could not be used in the foreign proceedings suggested by Applicant, it is not surprising that Applicant has taken no concrete steps toward initiating them.

### 1.    There Is No Proceeding In Which The Materials Can Be Used.

Information is not "for use" in foreign proceedings if applicants fail "to show any way that they could put before the foreign tribunals the information they sought to discover." *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 (2d Cir. 2015). "The key question . . . is not simply whether the information sought is relevant, but whether the [applicant] will actually be able to use the information in the proceeding." *Id.* at 120.  The demand that § 1782 applicants "identify some discernible procedural mechanism for introducing the evidence they [seek] simply reflects the burden on a § 1782 applicant to establish that it will have some means of actually using the evidence in the foreign proceeding." *Id.* at 122 n.11 (citation and internal quotations omitted).

---

[9] Applicant's purported use for discovery from the Cushing Respondents is limited to ECtHR proceedings.  *See* App. Memo re: Cushing at 1, 16 ("the *Querella* . . . is relevant to the other Application [concerning the Squire Respondents]"); Docampo June 6, 2017 Decl. ¶ 1; *see also id.* ¶ 9.

Here, Applicant refers to two types of foreign proceedings—a *Querella* and the ECtHR—without explaining how the requested discovery could be used in either.

### a.      New Evidence Cannot Be Presented In The ECtHR.

The ECtHR will not consider evidence that was not introduced in the underlying proceedings – here, the Spanish courts. *See* Ortiz Decl. ¶¶ 10-36; Suárez Decl. § 6.

To support his requests for § 1782 discovery, Applicant relies on the four-year old Supplemental Declaration of José Maria Ruiz Soroa,[10] and on the June 23, 2017 Declaration of Maria José Rodriguez Docampo.[11] Mr. Ruiz Soroa, however, mentioned the ECtHR in passing, without explaining which of that Court's procedural mechanisms would make it possible to introduce the evidence he sought. *See* Ruiz Soroa Supp. Dec. ¶ 16.

Ms. Docampo likewise fails to explain how the requested discovery could be used in the ECtHR. She claims that she was "informed by counsel assisting Capt. Mangouras in the ECtHR application" that the requested discovery will be "important," *see* Docampo June 23, 2017 Decl. ¶ 20, but Ms. Docampo does not identify, in either of her Declarations, any procedural mechanism by which the requested discovery could be used in an ECtHR proceeding.

Applicant cannot demonstrate the existence of any means by which he could obtain ECtHR consideration of the evidence he seeks here. The decisions of the ECtHR establish that "it is not [the ECtHR's] task to act as an appellate court or, as is sometimes said, as a court of fourth instance, for the decisions of domestic courts" and that "domestic courts are best placed to assess the credibility of witnesses and the relevance of evidence to the issues in the case."

---

[10]  App. Memo re: Squire (ECF No. 29) at 2; App. Memo re: Cushing (ECF No. 15 in 17MC186) at 22.

[11]  App. Memo re: Squire (ECF No. 29) at 2; App. Memo re: Cushing (ECF No. 15 in 17-mc-186) at 1.

*Kashlev v. Estonia*, 2016 Eur. Ct. H.R. 389, ¶ 48, http://hudoc.echr.coe.int/eng?i=001-162201.
Indeed, "according to Article 19 of the [European Human Rights] Convention, the duty of the
ECtHR is to ensure the observance of the engagements undertaken by the Contracting Parties to
the Convention," and "while Article 6 of the Convention guarantees the right to a fair hearing, it
does not lay down any rules on the admissibility of evidence or the way it should be assessed,
which are therefore primarily matters for regulation by national law and the national courts."
*García Ruiz v. Spain*, 1999-I Eur. Ct. H.R. 87, ¶ 28, http://hudoc.echr.coe.int/eng?i=001-58907.

The ECtHR thus dismisses "what are commonly referred to as 'fourth instance'
complaints," *i.e.*, applications that "question the findings and conclusions of the domestic courts
as regards," among other things, "the establishment the facts of the case," "the admissibility and
assessment or evidence at the trial" and "the guilt or innocence of the accused in criminal
proceedings." EUROPEAN COURT OF HUMAN RIGHTS, PRACTICAL GUIDE ON ADMISSIBILITY
CRITERIA 83 (2014), http://www.echr.coe.int/Documents/Admissibility_guide_ENG.pdf.   It is
worth noting that "most fourth-instance complaints are made under Article 6 §1 of the European
Convention on Human Rights concerning the right to a 'fair hearing' in civil and criminal
proceedings." *Id.* at 84.

Applicant has not specified the form of action he may be thinking about presenting to the
ECtHR, but, given the context, an Article 6 § 1 complaint would be the one option.  *See* Ortiz
Decl. ¶ 15.  If Applicant were to file an ECtHR application, that Court would limit its inquiry to
an assessment of whether his fundamental rights were violated in light of the evidence
considered by the Spanish courts.  *See* Ortiz Decl. ¶¶ 10-36; Suárez Decl. § 6.  The documents
that Applicant seeks to discover here were not presented during the proof-taking portion of
Applicant's Spanish trial, and therefore cannot be considered by the ECtHR.  *See id.*

19

Applicant decided in his trial in Spain not to demand the subject discovery, abandoning any argument in the ECtHR that the failure to order that discovery resulted in injustice. Accordingly, the possibility of proceedings in the ECtHR does not satisfy the "for use" requirement of § 1782.

  **b.**  **The Requested Discovery Cannot Be Used In A *Querella*.**

Applicant also claims that he needs the requested discovery for a *Querella*, a collateral proceeding that would be predicated the allegation that Messrs. Kostazos, Alevizos and Thuesen (collectively, the "At-Issue Witnesses") committed perjury in the trial at A Coruña. There exists, however, no possibility that the evidence Applicant seeks, if obtained pursuant to § 1782, can be used in *Querella*. *See* Ortiz Decl. ¶¶ 54-57. A *Querella* alleging false testimony can be predicated only upon false testimony given in a public hearing before a Spanish court: witness statements given outside of a Spanish judicial proceeding do not provide grounds for a *Querella* complaint. *See id.* ¶ 96 ("it must be recalled that the testimony that may be subject to a criminal complaint before the Spanish courts for the crime of false testimony needed to have been given in Spain, and as part of court proceedings (not even the statements given to government entities are valid for these purposes).").

Applicant concedes that he has "suspicions," Ruiz Soroa Suppl. Decl. ¶ 4, but no real basis for allegations that the three witnesses testified falsely, and that he could bring a *Querella* only "depending on the nature of the evidence obtained." Zabaleta Decl. ¶ 4. In 2013, moreover, Applicant's New York counsel declared to this Court that Applicant had no evidence of perjury on which to base a *Querella*:

> [I]t is, in the first instance, a crime to perjure oneself. It is a crime to promote perjurious testimony by an attorney, that suborning perjury is a crime . . . I shouldn't say 'perjure himself.' ***We don't know what was true or what wasn't true***.

*See* July 22, 2013 Hearing Transcript at 8:11-22 (emphasis added).

As Professor Ortiz explains, to initiate a *Querella*, a complainant does not submit evidence to an examining magistrate. *See* Ortiz Decl. ¶¶ 76-87. Rather, it is the role of the examining magistrate to investigate the facts and obtain relevant documents pursuant to Spanish law—including the laws governing professional secrecy—to ensure that any evidence obtained is admissible. *See id.* The examining magistrate will not accept evidence or documents outside of this process. *See id.* Thus, any evidence that Applicant could obtain through § 1782 discovery would be of no use in the *Querella*. *See id.* ¶ 87 ("The regulations governing private criminal complaints do not require even prima facie evidence of the alleged facts/acts.").

For these reasons, Applicant has failed to satisfy the "for use" requirement of § 1782. *See Certain Funds*, 798 F.3d at 120 ("we agree with the district court that [the] application fails to satisfy the statute's 'for use' requirement, because [Applicants] have not met their burden of establishing that they are in a position to use the evidence they seek through their § 1782 application in . . . ongoing foreign proceedings.").

> **2.    The Purported Foreign Proceedings Are Not "Within Reasonable Contemplation."**

When no foreign proceeding is ongoing, as is the case here, *Intel* teaches that such a proceeding must be "within reasonable contemplation" of the party seeking § 1782 relief. *Intel*, 542 U.S. at 259. The applicant "must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." *Certain Funds*, 798 F.3d at 123. Future proceedings "cannot be merely speculative," and the district court "must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Id.* at 123-24. An applicant "must present to the district

21

court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 124.

Applicant has failed to show that he reasonably contemplates bringing any specific foreign proceeding in which the results of § 1782 discovery can be used. Applicant's Spanish counsel does no more than express the hope that the requested discovery "*may* be used to support a *Querella* against the three witnesses" and "*may* also be used to support his claim before the ECtHR." Docampo June 23, 2017 Decl. at ¶ 22 (emphasis added). Spanish counsel does not state that any pleadings for the *Querella* or ECtHR proceedings have been drafted. *Id.* at ¶ 17. Spanish State Attorney Javier Suárez García confirms that no *Querella* has been filed against (1) Captain Efstratios Kostazos, the captain who commanded the Prestige before Applicant; (2) Jens Jorgen Thuesen, the pilot who led the Prestige through the Danish straits at the end of October 2012; or (3) George Alevizos, the superintendent who produced an expert report on the seaworthiness of the Prestige. *See* Suárez Decl. § 4.

A *querellante*—the party initiating a *Querella*—need only present legally sufficient allegations to the examining magistrate, who will not accept evidence obtained in violation of Spanish law, including the laws governing professional secrecy. Under the circumstances of this case, therefore, the examining magistrate will not admit evidence or documents obtained through § 1782 discovery, as Applicant would have obtained them in violation of Spanish professional secrecy. *See* Ortiz Decl. ¶¶ 76-87.

Nothing prevents Applicant from presenting a *Querella*, *see* Ortiz Decl. ¶¶63-75, and, if he were to do so, the Spanish examining magistrate would be able to obtain the subject evidence, if needed, in a manner that would make it admissible in evidence in Spain. Applicant's failure to file a *Querella* suggests that he is seeking the evidence here for some purpose other than Spanish

proceedings.  *See In re Certain Funds, Accounts, and/or Investment Vehicles*, 2014 U.S. Dist. LEXIS 95578, at *19-20 (S.D.N.Y. July 4, 2014) ("Although the petitioners attest that they have retained counsel to investigate and prosecute their claims in the planned proceedings, the Court is not persuaded that this means that a dispositive ruling by a foreign tribunal is within reasonable contemplation.  Furthermore, *the concerns about misuse of the discovery process are particularly pronounced in this case, since petitioners have had an opportunity to initiate judicial proceedings abroad but have failed to do so*. . . . [B]ecause the Court does not believe that a dispositive ruling is 'within reasonable contemplation' in this case, and because we are concerned that this action is more akin to a fishing expedition, we conclude that petitioners may not rely on their planned proceedings to satisfy the statutory requirement that the material be for 'use' in a foreign proceeding.  Therefore, we conclude that petitioners have failed to satisfy the second statutory requirement of § 1782.") (emphasis added).

District courts "must guard against efforts by parties to engage in fishing expeditions before actually launching litigation." *In re Certain Funds*, 2014 U.S. Dist. LEXIS 95578, at *18, *aff'd*, 798 F.3d 113 (2d Cir 2015). "If the judge doubts that a proceeding is forthcoming, or suspects that the request is a 'fishing expedition,' the district court should deny the request." *Id.* (citations and internal quotations omitted).

Applicant clearly wants the information he seeks, and he probably believes it may be useful in some proceeding, somewhere, but he posits only a proceeding in which new evidence cannot be used (in the ECtHR), and a proceeding in which the judicial assistance of this Court pursuant to § 1782 would render the requested evidence inadmissible (a *Querella*).  The statute "is not designed to provide potential litigants with information that will help them decide

23

whether and where to commence proceedings." *Jiangsu S.S. Co. v. Success Superior Ltd.*, 2015 U.S. Dist. LEXIS 18388, at *15 (S.D.N.Y. Jan 5, 2015).

Applicant's § 1782 request is not materially different from the request denied in *Jiangsu* for failure to satisfy the second statutory requirement of 28 U.S.C. § 1782:

> Jiangsu's effort to identify a "reasonably" contemplated procedure differs not a whit from a scenario in which I "reasonably contemplate" buying a new car because I might win the lottery if I decide to buy a ticket on my way to work tomorrow morning. I might indeed contemplate buying a car with my winnings, should I actually obtain them, but my contemplation is not "reasonable" until I have some money with which to purchase the car.

*Jiangsu*, 2015 U.S. Dist. LEXIS 18388 at *11-12.

Applicant's purported contemplated actions fall short of the objective showing needed to satisfy the requirements of § 1782. His motions to compel should be denied.

### B. Applicant Has Failed To Establish That Spain (Applicant's Real Target) Is A "Person" That "Resides Or Is Found" In This District.

Applicant also fails to establish another statutory prerequisite under § 1782 – that the discovery be sought from "a person" that "resides or is found" in this district.

As this Court recognized in 2013, "for all intents and purposes, the real subject of the subpoena is Applicants' opponent in the foreign proceeding [Spain]." *In re Mare Shipping*, 2013 U.S. Dist. LEXIS 152337, at *14. The Spanish Government is not a "person" within the meaning of § 1782, nor can the Spanish Government be "found" in this district. Indeed, Spain is not subject to the personal jurisdiction of this Court as a matter of constitutional due process.

### 1. Spain Is Not A "Person" Within the Meaning Of § 1782.[12]

---

[12] The Squire Respondents raised this argument in response to Applicant's 2013 application. *See* ECF No. 25 (Case No. 13-mc-238) at 16. This Court, however, did not reach the issue because it denied Applicant's requested discovery on other grounds. *See In re Mare Shipping Inc.*, 2013 U.S. Dist. LEXIS 152337 (S.D.N.Y. Oct. 22, 2013).

In this case, this Court lacks authority to compel compliance with the subpoenas issued pursuant to § 1782 because Applicant seeks documents that belong to the Spanish Government, and "a foreign government does not constitute a 'person' from whom discovery may be sought pursuant to 28 U.S.C. § 1782." *Thai-Lo Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic,* 2012 U.S. Dist. LEXIS 37915 at *5 (S.D.N.Y. Mar. 20, 2012) (citations omitted).

The Dictionary Act, 1 U.S.C. § 1, which governs the meaning of statutes "unless the context indicates otherwise," excludes sovereigns from the definition of "person," and the Supreme Court has long held that the word "person" in a statute does not include a sovereign absent affirmative evidence of inclusory intent. *See Thai-Lao Lignite*, 2012 U.S. Dist. LEXIS 37915, at *4-8 (citing *U.S. v. United Mine Workers of America,* 330 U.S. 258, 275 (1947)); *see also In re Republic of Kaz. for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) ("Several courts have found that a sovereign is not a 'person' who can be *ordered* to produce documents pursuant to section 1782").

## 2.    The Court Cannot Exercise Personal Jurisdiction Over Spain, Which Does Not "Reside" And Is Not "Found" In This District.[13]

Even if Spain were a "person" within the meaning of § 1782, Respondents cannot be ordered to produce Spain's documents because Spain does not "reside" and is not "found" here.

It is well established that, for a district court to order discovery under § 1782, "the entity from which the documents are sought must be located in this district." *In re Fuhr*, 2014 U.S. Dist. LEXIS 186812, at *4 (S.D.N.Y. Aug. 6, 2014), *aff'd, Fuhr v. Deutsche Bank, AG*, 615 F. App'x 699 (2d Cir. 2015). An applicant cannot circumvent this "threshold requirement" by

---

[13] This issue is currently *sub judice* in the Second Circuit in *Kiobel v. Cravath, Swaine & Moore, LLP* (Case No. 17-424-cv) (ECF No. 42 at 20-39).

seeking discovery from a local "custodian of records" when the "evidence at issue" concerns a foreign entity. *Id.* at 2-4 (emphasizing that the foreign entity "has no offices or property here" and that it "does no business here [or] anywhere in the United States.").

The statutory requirement that the discovery target "resides or is found" in the district reflects the requirements of constitutional due process. It is a fundamental rule that a court cannot compel compliance with a subpoena unless it has personal jurisdiction over the subpoena's target. *See, e.g., In re Marc Rich*, 707 F.2d 663, 667 (2d Cir. 1983); *Gucci Am., Inc. v. Weixing L*i, 768 F.3d 122, 141 & n.22 (2d Cir. 2014) ("A district court must have personal jurisdiction over a nonparty to compel it to comply with a discovery request under Rule 45."). To establish personal jurisdiction over a foreign party consistent with constitutional due process, a plaintiff has the burden of showing that the foreign party has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under the U.S. Supreme Court's most recent personal jurisdiction opinions (decided after Applicant's § 1782 discovery requests in 2013), and under the Second Circuit's 2014 decision in *Gucci*, neither general nor specific jurisdiction exists over Spain for purposes of Applicant's renewed applications. *See Motorola Credit Corp. v. Uzan*, 132 F. Supp. 3d 518, 520 (S.D.N.Y. 2015) ("*Daimler* [infra] and *Gucci* significantly changed the law of personal jurisdiction").

First, there is no general jurisdiction over Spain. In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the U.S. Supreme Court unanimously held that general jurisdiction does not exist over a foreign entity unless its "affiliations with the State are so 'continuous and systematic' as to render [it] *essentially at home* in the forum State." *Id.* at 640-41 (citations omitted) (emphasis

added).  The Spanish Government is in no sense "essentially at home" in New York or anywhere else in the United States.  Thus, general jurisdiction does not exist over it.

Specific jurisdiction does not exist either.  Just last month, in its 8-1 opinion in *Bristol-Myers Squibb Co. v. Superior Court*, 198 L. Ed. 2d 395 (2017), the U.S. Supreme Court made clear that for the exercise of specific jurisdiction, "the suit" must "aris[e] out of or relat[e] to the defendant's contacts with the forum."  *Id.* at 403 (citations omitted).  "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Id.* (citation and internal quotations omitted).  For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Id.* (citation omitted).

Although the Court in *Bristol-Myers* did not address specific jurisdiction over *nonparties*, the test in the context of subpoenas has been translated into a focus "on the connection between the nonparty's contacts with the forum and the discovery order at issue."  *Gucci*, 768 F.3d at 141 (citation omitted).  Additionally, even where jurisdiction is found, a court should apply the principles of international comity to ensure that any discovery order will not infringe on a nation's sovereign interests.  *Id.* at 768 F.3d at 139-40 (comity analysis appropriate "when a court order will infringe on sovereign interests of a foreign state"); *see also Bristol-Myers*, 198 L. Ed. 2d at 409 ("the exercise of jurisdiction must be reasonable under the circumstances"); *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987) ("The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant . . . as well as the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction . . . .").

Here, specific jurisdiction does not exist over Spain because Applicant's discovery requests are based on claims concerning the testimony of witnesses at a trial in Spain, and Applicant seeks documents and information that he could have obtained from the Spanish court. Spain's sovereign interests, moreover, would be infringed if Applicant could exploit Spain's relationship with its law firm and experts to circumvent both Spanish law and statutory and constitutional limits on discovery in the United States. *See Gucci*, 768 F.3d at 139 (discussing comity principles); *cf. In re Godfrey*, 526 F. Supp. 2d at 423 (§ 1782 should not be used to turn U.S. courts into "clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world") (citation omitted).

Applicant, moreover, cannot circumvent the limits of constitutional process simply by subpoenaing Respondents in New York. As courts have recognized, a party cannot obtain discovery from a foreign party merely because the court may have jurisdiction over the foreign party's agent or representative. *See In re Sealed Case*, 832 F.2d 1268, 1272-73 (D.C. Cir. 1987), *abrogated on other grounds by Braswell v. United States*, 487 U.S. 99 (1988) ("The mere fact that the court has jurisdiction over an alleged representative of the companies is patently insufficient to establish jurisdiction over the companies or to entitle the [party seeking discovery] to view company documents. . . . [S]ervice of a subpoena on the Witness as 'custodian' for the companies cannot confer on the [party seeking discovery] a right to inspect their records unless it can show that the District Court possesses personal jurisdiction over them.").[14]

---

[14] *See also Marc Rich*, 707 F.2d at 665, 667-68 ("service of a subpoena upon [the firm's] officers within the territorial boundaries of the United States would be sufficient to warrant judicial enforcement of the grand jury's subpoena" only if the district court had "personal jurisdiction over [the firm]"); *Estate of Ungar v. Palestinian Auth.*, 412 F. Supp. 2d 328, 329, 332 (S.D.N.Y. Jan 5, 2006) (court could not compel production of "corporate documents in [the] Respondent's possession by virtue of his position as Chairman of [a corporation]" because it lacked personal jurisdiction over the corporation) (citing *In re Sealed Case*).

This general rule is particularly important in the attorney-client relationship, which is "a quintessential principal-agent relationship." *Commissioner v. Banks*, 543 U.S. 426, 436 (2005). It is well-established that client files belong to the client, not the attorney. *See Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 320 (S.D.N.Y. 1991) ("files belong to the client") (citation omitted); *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 91 N.Y.2d 30, 36 (N.Y. 1997). Likewise, an attorney's notes constitute work product belonging to the client. *See Sage Realty*, 91 N.Y.2d at 30, 35-37; Restatement of the Law (Third) Governing Lawyers § 46(2).

Accordingly, because Applicant's subpoenas are targeted at Spain, and because personal jurisdiction does not exist over Spain, Applicant's motions to compel should be denied.

## IV. DISCOVERY SHOULD BE DENIED IN THE SOUND EXERCISE OF THE COURT'S DISCRETION.

In *Intel*, the Supreme Court emphasized that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Id*. at 263. Accordingly, the Court "suggest[ed] guides for the exercise of district-court discretion," *id*. at 263 n. 15, in the form of "factors that bear consideration," *id*. at 264-66 (the "*Intel* factors"), in determining "what, if any, assistance is appropriate." *Id*. at 266. A district court may deny § 1782 discovery based on a single factor alone. *See In re Apotex Inc.*, 2008 U.S. Dist. LEXIS 109420, at *9-10 (S.D.N.Y. Dec. 30, 2008) (denying § 1782 application because one *Intel* factor weighed against it); *see also In re Nokia Corp.*, 2013 U.S. Dist. LEXIS 160733, at *9-10 (N.D. Cal. Nov. 8, 2013) (denying § 1782 application although three of the four *Intel* factors weighed in favor of the applicant).

As they did in 2013, the *Intel* factors weigh overwhelmingly in favor of denying Applicant's requested discovery.

29

### A.      Spain Has Been And Would Be a Participant In Any Foreign Proceeding.

Under the first *Intel* factor, a district court examines whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. As the Supreme Court observed:

> when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782 aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.

*Id.* In such cases, the "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."

The first *Intel* factor favors denying Applicant's requested discovery. Applicant expressly concedes that Spain would be a party to any proceeding brought before the ECtHR. *See* App. Memo re: Squire at 14. As to a *Querella*, moreover, it is undisputed that Applicant and Spain were parties to the Spanish proceedings in which the testimony was given that is now claimed to have been false. It is also undisputed that the Spanish tribunal had the power during the public hearing phase of those proceedings to order production of the evidence now sought here. *See* Suárez Decl. § 5. Indeed, it is beyond dispute that the Spanish tribunal had the authority to order the Spanish State Attorneys to obtain the evidence that Applicants seek, to adjourn its proceedings pending receipt, and to order Mr. Starer, while he was subject to the jurisdiction of the *Audiencia*, to give testimony.

But Applicant took no steps to request the information he seeks here, despite learning about the allegedly "new" evidence long before the conclusion of the Spanish trial and despite Mr. Starer's presence in the Spanish courtroom. Applicant's claim that he "exhausted every avenue of obtaining this evidence" and "left no stone unturned," App. Mem. re Squire (ECF No. 29) at 17, cannot be squared with the record.

Applicant's claim, moreover, that the desired evidence is "unavailable" for a *Querella* through Spanish procedures has no foundation in Spanish law.  To the contrary, the evidence must be obtained through the procedures prescribed by Spanish law for it to be admissible there.  *See* Ortiz Decl. at ¶¶ 76-87.

Under *Intel*, the need for § 1782(a) aid in these circumstances is "not apparent."  *Id.* at 264.  Indeed, it is nonexistent.  A decision not to move the *Audiencia* for the evidence sought here because it had rejected earlier requests does not establish a need for relief under § 1782.  *See In re Digitechnic*, 2007 U.S. Dist. LEXIS 33708, at *9-11 (W.D. Wash. May 8, 2007) (applicant claimed it had not attempted to use any French procedures "due to perceived futility").

Applicant has not shown that the discovery he seeks is beyond the reach of the Spanish courts.  Discovery pursuant to § 1782 would therefore be both "unnecessary and improper."  *In re Microsoft*, 428 F. Supp. 2d at 194.[15]

## B.    Respondents Have Shown That The ECtHR And The Spanish Courts Would Not Be Receptive To U.S. Judicial Assistance In This Case.

Pursuant to the second *Intel* factor, the district court focuses on the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  The discovery sought by Applicant should be denied pursuant to this factor as well.

It should be emphasized that there are no proceedings underway abroad:  Applicant merely postulates that he may bring proceedings before two tribunals, the ECtHR and a Spanish

---

[15] Against the Squire Respondents, Applicant argues that Spain "is/was a party to the foreign action."  App. Memo re: Squire at 14 (ECF No. 29).  Against the Cushing Respondents, however, Applicant fails to address the first *Intel* factor and urges the view that he cannot obtain the requested discovery without this Court's assistance.  *See* App. Memo re: Cushing at 12 (ECF No. 15 in 17-mc-186).  This presentation elides the fact that Applicant took ***no*** steps before the Spanish tribunal to request the information he seeks here.  *See* Suárez Decl. at § 5.

31

examining magistrate.  The nature of the ECtHR is that it is not a "proof-taking instance."  *Intel*, 532 U.S. at 257; Ortiz Decl. at ¶ 19.  A Spanish examining magistrate does collect and evaluate evidence, but could not consider evidence gathered in violation of Spanish professional secrecy laws, as the evidence sought here would be, if obtained via the instant proceedings.  *See* Ortiz Decl.  ¶¶ 54-57.

Spanish law prohibits the disclosures that Applicant seeks, and Applicant has failed to designate any foreign proceeding in which he could introduce any evidence obtained here.  Granting the requested discovery thus would undermine one of the primary purposes of § 1782, to assist foreign tribunals in obtaining information they may find useful but "for reasons having no bearing on international comity, they cannot obtain under their own laws."  *Intel*, 542 U.S. at 262; *see also Nascimento v. Faria*, 600 F. App'x 811, 812 (2d Cir. 2015) (no abuse of discretion where district court quashed subpoena because applicant's "discovery efforts were 'inexcusably untimely' and would not provide an 'efficient means of assistance' to the foreign proceedings").

Applicant cites no authority to support his claim that the Spanish courts or the ECtHR would be receptive to the evidence he seeks here; rather, he proffers the 2013 Declarations of Spanish lawyers who asserted, conclusorily, that they were "confident" that the evidence could be used in the Spanish appellate courts, in a *Querella*, and/or in the ECtHR.[16]  Counsel's unsupported expressions of "confidence" were insufficient to support Applicant's requested discovery in 2013, and are no better now, especially in light of Respondents' authoritative demonstration that the requested evidence cannot be used.  The second *Intel* factor also weighs in favor of denying discovery.  *See In re Digitechnic,* 2007 U.S. Dist. LEXIS 33708, at *11-12.

---

[16] *See* App. Memo re: Squire at 2 (citing Docampo June 23, 2017 Decl. ¶¶ 10, 15, 17, incorporating the July 22, 2013 Zabaleta Decl. at ¶ 6, and the August 23, 2013 Ruiz Soroa Supp. Decl. at ¶ 6-9, ¶ 16); App. Memo re: Cushing at 22 (citing Ruiz Soroa Supp. Decl. at ¶ 16).

### C.    Applicant's Failure To Seek The Discovery In Spain Betrays An Attempt To Circumvent Spanish Proof-Gathering Restrictions.

Under the third *Intel* factor, a district court should consider whether a § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. This factor also weighs in favor of denying Applicant's motions to compel.

In denying Applicant's § 1782 application in 2013, this Court concluded that "the real subject of the subpoena is Applicants' opponent in the foreign proceeding [Spain]," and that Applicants failed "to seek the requested material through Spanish proof-mechanisms." *Mare Shipping*, 2013 U.S. Dist. LEXIS 152337, at \*14. Just as in 2013, this Court now properly may question why Applicant took no steps before the Spanish courts to obtain the discovery he claims is so important for a *Querella* or ECtHR application. *See In re Kreke Immobilien KG*, 2013 U.S. Dist. LEXIS 160283, at \*17 (S.D.N.Y. Nov. 8, 2013) ("Essentially, the argument seems to be that [applicant] cannot be faulted for circumventing German rules if it just chooses not to engage with those rules in the first place. . . . [but Section 1782] was not intended as a vehicle to avoid . . . an unfavorable discovery decision from a foreign tribunal.") (citation and quotations omitted); *Aventis Pharma v. Wyeth*, 2009 U.S. Dist. LEXIS 105422, at \*2-3 (S.D.N.Y. Nov. 6, 2009) (application denied: applicant's failure to seek the documents in the foreign proceeding held probative of attempt to circumvent foreign proof gathering restrictions).[17]

---

[17] *See also In re Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 107 (D.D.C. 2010) (a "district court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction"); *Digitechnic*, 2007 U.S. Dist. LEXIS 33708, at \*10 (denying application for § 1782 discovery because "[the applicant] has not even tried to obtain any of the discovery sought here by way of French discovery tools," stating that there is "no reason that this Court should overlook [applicant's] failure to attempt any discovery measures in France in making the discretionary decision now before it").

Applicant sought to explain his failure to move in Spain for evidence concerning the At-Issue Witnesses' New York declarations with what can be described as a "futility" argument:

> The truth is that we asked the Spanish Court for a great deal of documents from the New York proceedings in the very Defense Pleadings of 28.09.2010 on behalf of Apostolos Mangouras and Mare Shipping. . . . Our requests were denied in the Autos of the said "Audiencia Provincial" of 18.06.2012 and 31.10.2012. . . . This was the general approach of the Spanish Court to those petitions and it was evident that a negative response would be received from it in all similar petitions.

Ruiz Soroa Supp. Decl. ¶ 5.   Taken at face value, this argument confirms that Applicant's renewed § 1782 applications (like his original application in 2013) are a "forum shopping" mechanism.   Where forum shopping is shown, discovery is appropriately denied:

> It would create a perverse system of incentives—one counter to the efficiency and comity goals of § 1782—to encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority. . . . [W]e are loath to sanction forum shopping under the guise of § 1782.

*In re Kreke*, 2013 U.S. Dist. LEXIS 160283, *17-19.  As in *Kreke*, "the locus of this action is . . . clearly in [the foreign jurisdiction] and there is no suggestion that any documents sought are outside the jurisdictional reach of the [foreign] courts." *Id*. at *18.  The materials that Applicant seeks should have been sought long ago in Spain; and any materials not discoverable under Spanish law (*i.e.*, all of them) should not be made available here.  *Id*. at *20 (the "§ 1782 application has all the appearances of an attempt to circumvent German discovery rules, and thus this factor cuts against granting the petitioner' request").

The fact that the Spanish laws governing professional secrecy protect against diclosure of the requested discovery further supports denial of § 1782 discovery under the third *Intel* factor.  *See In re Okean*, 60 F. Supp. 3d at 432 n.2 ("[T]he third discretionary *Intel* factor . . . has now in fact been shown, too, to favor denial of [the] § 1782 application. . . . [T]he Court is now persuaded that production of [the law firm's] privileged materials would breach the laws of . . .

Russia and Ukraine.  This finding reinforces and supplies an independent basis for denial of the §

1782 application.").

> **D.    The Requested Discovery Seeking Privileged Materials Is Unduly Intrusive And Burdensome, Not Proportional, And Harassing.**

Finally, the fourth *Intel* factor weighs against enforcing Applicant's subpoenas because the requested discovery is unduly intrusive and burdensome, far in excess of the scope of relevant and proportional discovery, and intended to harass Respondents, the Spanish Government, and the At-Issue Witnesses who testified against Applicant in Spain.

As demonstrated above, all of the discovery that Applicant seeks is subject to the Spanish laws governing professional secrecy, and making the requested disclosures would expose Respondents to criminal sanctions under Spanish law.  *See* Ortiz Decl. ¶ 55; *see also* Serrano Letter § 10; Suárez Dec. § 7.  Clearly, therefore, the subpoenas impose an undue burden.

Applicant's production requests also clearly target materials protected by the U.S. attorney-client privilege and work product doctrines.  Section 1782 discovery should be denied as "unduly intrusive and burdensome" where "it seeks documents that. . . are privileged."  *In re Microsoft Corp.*, 428 F. Supp. 2d at 196 (denying § 1782 application in part because the discovery request was "unduly intrusive and burdensome in that it seeks documents that may be protected as confidential by the [European] Commission's rules on access to file and that are privileged under U.S. law"); *In re Okean*, 60 F. Supp. 3d at 432-33 ("As [the law firm] has persuasively shown, its production of such materials, in violation of the foreign advocate secrecy and data privacy laws, could expose its lawyers to sanctions. . . . The burden that production of such documents would impose on [the law firm] and its non-waiving clients is so great that it easily outweighs the other *Intel* factors, and compels denial of [the] § 1782 application.").

Even if Applicant could overcome the legally applicable privileges here, the requested

discovery would be unduly burdensome.  *See In re Apotex*, 2008 U.S. Dist. LEXIS 109420, at *9

(denying § 1782 discovery because in responding to subpoena, respondent "would, in all

likelihood, have to expend substantial resources to determine applicable privileges and create a

privilege log").  To comply with the subpoenas as currently framed, the Squire Respondents

alone would have to review, among other things, an Outlook file containing 18,171 e-mails

(many written in Spanish), a local drive containing 12 Summation databases, totaling

approximately 336 gigabytes in size, and an 87-megabyte database containing photographs and

images of documents such as maps, charts, diagrams, and other exhibits, as well as transcripts

and expert reports (in English, Spanish, and Greek).  A similar review would be necessary for the

Cushing Respondents.

The requested discovery, moreover, is not proportional to Applicant's needs and does not

outweigh the burden placed on Respondents in having to produce it.  Applicant's Spanish

counsel brought the perceived inconsistencies between the At-Issue Witnesses' testimony and

their New York statements to the Spanish tribunal's attention when he cross-examined them, *see*

July 22, 2013 Hearing Transcript at 5-6, and the Spanish tribunal made its own credibility

determinations.  *See* Ortiz Decl. ¶ 95 ("neither the decision by the Provincial Court nor by the

Supreme Court have found that the witnesses gave false testimony").  Under these

circumstances, there is nothing to be gained from the discovery sought here, and the burden that

Applicant seeks to impose on Respondents clearly outweighs any evidentiary value the materials

may provide.

This is particularly true as to the discovery that Applicant seeks from the Cushing

Respondents regarding "underwater inspections" and "ultrasonic measurements" of the hull of

the *Prestige*.  *See* App. Memo re: Cushing at 3-4, 15.  Any information that Dr. Cushing may

have regarding the thickness of the *Prestige*'s hull is irrelevant as to Applicant because he (unlike the classification society and the ship's owners) was held not to be responsible for verifying whether the hull of the vessel was structurally sound, or otherwise to know about the condition of underwater portions of the hull.  *See* Ortiz Decl. ¶ 17 ("the Spanish courts . . . have neither found it proven that Captain Mangouras was aware of the condition of the ship before events occurred, nor have they expressly found it proven that he was not aware of it.").  Such information thus played no part in the Spanish courts' determination of Applicant's criminal liability, and its discovery should be denied because it would be of no relevance to Applicant in challenging his conviction.  *See In re WinNet R CJSC*, 2017 U.S. Dist. LEXIS 56985, at *22 (S.D.N.Y. Apr. 17, 2017) (denying § 1782 discovery, concluding in part that the requested discovery would have "no apparent relevance" to the foreign proceedings); *In re XPO Logistics, Inc.*, 2017 U.S. Dist. LEXIS 77426, at *26-27 (S.D.N.Y. May 22, 2017) ("the fourth *Intel* factor weighs in favor of [respondent]" when applicant seeks discovery on the basis of allegations that are "speculative and of minimal, if any, relevance").

Ultimately, Applicant's baseless demand for searches and production of patently privileged documents in Respondents' possession (despite the impossibility that he could use any of the discovery in the proceedings for which he claims he needs it) raises a strong inference that his discovery requests are a fishing expedition intended only to harass Respondents and the Spanish Government.  *See* Serrano Letter § 3 ("As a result of the Supreme Court decision, the parties adjudicated to be liable have given notice that they are initiating a series of actions in various jurisdictions aimed at blocking any damages award fixed by the Tribunal in A Coruña.").  The concern that a § 1782 application is being used in such a fashion is a relevant consideration in the Court's exercise of discretion under the *Intel* factors:

37

> [T]he Court is also concerned that Petitioner is using the § 1782 petitions as a fishing expedition . . . Courts typically analyze such "fishing expeditions" under § 1782's statutory requirements to determine whether discovery is sought for "use" in a foreign proceeding. . . . [T]he Court concludes that concern for abuse of the § 1782 petition, as in the form of a fishing expedition to determine what other proceedings might be brought, *is equally relevant to the exercise of its discretion*.

*In re Harbour Victoria Investment Holdings Ltd.*, 2015 U.S. Dist. LEXIS 87912, at *18-19 (S.D.N.Y. June 29, 2015) (emphasis added).[18]

When all the facts are considered, the fourth *Intel* factor strongly weighs against Applicant's requested discovery, and indeed independently justifies denying Applicant's motions to compel. *See In re Elvis Presley Enterprises, LLC*, 2016 U.S. Dist. LEXIS 25136, at *17 (S.D.N.Y. Mar. 1, 2016) (denying § 1782 application in toto, recognizing that "a court may deny rather than merely limit discovery sought under § 1782 where a narrowly tailored discovery order is not possible") (citations and internal quotations omitted).

## V.   APPLICANT'S SUBPOENAS SHOULD BE QUASHED FOR FAILURE TO PROVIDE NOTICE UNDER FEDERAL CIVIL RULE 45.

Discovery under § 1782(a) is governed by the Federal Rules of Civil Procedure, unless ordered otherwise. *See* 28 U.S.C. § 1782(a); *see also In re Passport Special Opportunities*

---

[18] *See also In re Apotex*, 2008 U.S. Dist. LEXIS 109420, at *6 (quashing subpoena under § 1782 and recognizing that "if a court suspects that the [§ 1782 discovery] request is a fishing expedition or a vehicle for harassment, the district court should deny the request") (quoting *In re an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (internal quotations omitted)); *In re Request for Assistance from Ministry of Legal Affairs*, 848 F.2d 1151, 1156 (11th Cir. 1988) (if a judge "suspects that the request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request"); *In re MT "Baltic Soul" Produktentankschiff-Ahrtsgesellschaft MBH & Co. KG*, 2015 U.S. Dist. LEXIS 136080, at *8 (S.D.N.Y. Oct. 6, 2015) ("Petitioners' request has every indication of being an archetypal fishing expedition . . . The Court declines to facilitate such an exercise based on the present record."); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012) ("a district court may deny the section 1782 application where it suspects that the discovery is being sought for the purposes of harassment"); *In re WinNet*, 2017 U.S. Dist. LEXIS 56985, at *18-19 ("if a § 1782 application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto") (citation omitted).

38

*Master Fund*, 2016 U.S. Dist. LEXIS 25657, at *10-11 (S.D.N.Y. Mar. 1, 2016) ("Because §
1782 provides that discovery for use in foreign proceedings shall be produced 'in accordance
with the Federal Rules of Civil Procedure,' the Court first considers the threshold question of
whether the subpoena satisfies the requirements of Rule 45.").

Federal Civil Rule 45(a)(4) provides that "before it is served on the person to whom it is
directed, a notice and a copy of the subpoena must be served on each party."  Rule 45's notice
provision "is mandatory and failure to abide by this requirement constitutes grounds to quash as
subpoena."  *Mirra v. Jordan*, 2014 U.S. Dist. LEXIS 77065, at *9 (S.D.N.Y. May 28, 2014)
(quashing subpoenas served in violation of Rule 45(a)(4)'s requirement of prior notice); *see also
Cootes Drive LLC v. Internet Law Library, Inc.*, 2002 U.S. Dist. LEXIS 4529, at *6 (S.D.N.Y.
Mar. 19, 2002) (reiterating order quashing subpoena "solely on the lack of prior notice").

Rule 45's notice requirements apply where a § 1782 application is granted for use
against parties in future proceedings.  *See In re Hornbeam Corp.*, 2015 U.S. Dist. LEXIS
142361, at *15 (S.D.N.Y. Sept. 17, 2014) ("a party engaged in foreign litigation who serves a §
1782 subpoena duces tecum to obtain documents for use in the foreign litigation must first
serve notice on all parties to the foreign proceedings") (citations omitted).

Here, Applicant concedes that he failed to provide notice of his subpoenas under § 1782
to the At-Issue Witnesses.  *See* App. Memo re: Squire at 24. When coupled with the other
factors above, this Court also should exercise its broad discretion to quash Applicant's
requested discovery for failure to provide notice.  *Id.* at *28 ("It is within my discretion to
quash a subpoena pursuant to Rule 45 for failure to provide other parties with notice before
serving the subpoena.") (citation omitted).

39

**CONCLUSION**

For the foregoing reasons, Respondents respectfully request that this Court deny

Applicant's motions to compel compliance with the subpoenas previously issued pursuant to 28

U.S.C. § 1782, that it quash the subpoenas, and that it dismiss the Applications.

DATED:    New York, New York        Respectfully submitted,
             July 26, 2017

                                   Squire Patton Boggs (US) LLP

                                   By:   *s/Victor Genecin*
                                        Victor Genecin (VG9733)
                                   victor.genecin@squirepb.com
                                   30 Rockefeller Plaza, 23rd Floor
                                   New York, New York 10112
                                   Tel:  212.872.9800
                                   Fax:  212.872.9815

                                   *Attorneys for Respondents*
                                   Squire Patton Boggs (US) LLP,
                                   Brian D. Starer, Esq., CR Cushing & Co., and
                                   Charles R. Cushing, Ph.D., P.E.

40

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served on all parties of record via this court's electronic filing system on this 26th day of July, 2017.

<u>*s/ Victor Genecin*</u>
Attorney for Respondents

41