UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE APPLICATION OF APOSTOLOS
MANGOURAS TO CONDUCT DISCOVERY FOR                  17-mc-172
USE IN A FOREIGN PROCEEDING PURSUANT
TO 28 U.S.C. 1782                                   MEMORANDUM AND ORDER
-----------------------------------------------------------x

CASTEL, Senior District Judge.

   Petitioner Apostolos Mangouras seeks an Order permitting him to conduct discovery for use in foreign proceedings pursuant to 28 U.S.C. § 1782. Mangouras was the captain of a Bahamian-flagged tanker, the *Prestige*, which spilled up to 76,972 metric tons of fuel oil when it sank near the coast of Spain in November 2002. (See, e.g., 7/8/13 Soroa Dec. ¶¶ 12-13.)

   Numerous legal proceedings followed the sinking of the *Prestige*, including a civil action in this District, Reino de Espana v. Am. Bureau of Shipping, Inc., et al., 03 Civ. 3573 (LTS) (the "ABS Action"), and criminal proceedings against Mangouras in Spain. A trial court in Spain found Mangouras not guilty of environmental crimes, which the Spanish Supreme Court reversed, and issued a finding of guilt.

   Mangouras now seeks discovery for use in two categories of post-trial proceedings. In Spain, he anticipates filing one or more "Querella Criminal," which is an application that a private citizen may bring to commence criminal proceedings. The anticipated Querella Criminal would assert that three trial witnesses gave false testimony, and that their testimony in Spain was in direct conflict with statements that they made in the ABS Action in this District. Separately, Mangouras has filed a sealed application with the European Court of Human Rights (the "Court of Human Rights"), in which he contends that the Spanish criminal

1

proceedings breached his right to a fair trial, as guaranteed by the European Convention on Human Rights.

While the Spanish criminal proceedings were pending, this Court denied a section 1782 application brought by Mangouras and his employer, Mare Shipping Inc. ("Mare"). In re Mare Shipping Co., 2013 WL 5761104 (S.D.N.Y. Oct. 23, 2013). The Second Circuit affirmed, but emphasized that Mangouras and Mare could bring a future section 1782 application if circumstances changed. Mare Shipping Inc. v. Squire Sanders (US) LLP, 574 Fed. App'x 6, 8-9 (2d Cir. 2014) (summary order).

For reasons that will be explained, Mangouras's application is granted.

BACKGROUND.

    A.  Procedural History.

As noted, Mangouras was the captain of the *Prestige*, an oil tanker that sank near the coast of Spain on November 13, 2002. (6/6/17 Docampo Dec. ¶ 3.) The vessel sank in severe weather approximately 27 miles off the coast of Spain, while heading toward Gibraltar. (7/8/13 Soroa Dec. ¶ 12.) Mangouras sought and was denied a port of refuge in Spain prior to the *Prestige*'s sinking. (Id. ¶ 13.) The *Prestige* released approximately 76,972 metric tons of oil into Spain's coastal waters. (Id.)

Numerous legal proceedings followed. In this District, the Kingdom of Spain commenced a civil action against ABS, which acted as the sailing vessel's "Classification Society." (Id. ¶¶ 9, 17.) Respondents Brian Starer, Esq., and his respective law firms, Holland & Knight LLP and Squire Sanders, LLP, were counsel to Spain in the ABS Action. (Id. ¶ 17.) Spain alleged that ABS and its subsidiaries recklessly certified the *Prestige* as seaworthy, and sought $1 billion in damages. See Reino de Espana v. Am. Bureau of Shipping, Inc., 03 Civ.

2

3573 (LTS). Applying United States maritime law, Judge Swain concluded that ABS owed no legal duty to Spain, and granted ABS's motion for summary judgment. 729 F. Supp. 2d 635 (S.D.N.Y. 2010). The Second Circuit affirmed. 691 F.3d 461 (2d Cir. 2012).

In Spain, civil claims were brought against Mare, and Mangouras was charged with criminal environmental offenses. (7/8/13 Soroa Dec. ¶¶ 18-19.) Spain's criminal investigation of Mangouras lasted approximately ten years, and his 2013 criminal trial lasted approximately nine months. (6/6/17 Docampo Dec. ¶ 4.) Mangouras was tried in La Coruna, Spain before a tribunal, the Court of First Instance, which issued a written opinion in November 2013 finding him not guilty of all but one charge, and making factual findings that Mangouras was unaware of the vessel's structural defects. (Id.) Subsequently, in a judgment published on January 26, 2016, the Spanish Supreme Court reversed, and found Mangouras guilty of gross negligence. (Id. ¶ 7.) The Spanish Supreme Court denied Mangouras's application to vacate the judgment, and the Spanish Constitutional Court denied his appeal in March 2017. (Id.)

According to Mangouras's legal counsel in Spain, the structural soundness of the *Prestige* was "a central issue in the trial." (7/8/13 Soroa Dec. ¶ 18.) As his counsel explained in 2013, while the trial was underway:

> For Mangouras to be convicted of a crime against the environment, the Court will need to be satisfied beyond a reasonable doubt that the vessel was in poor condition, that Mangouras knew of the vessel's poor condition, and that the vessel's poor condition caused the damage. It is therefore crucial to ascertain whether the vessel was, in fact, in poor condition.

(Id. ¶ 22.)

This Court previously denied a section 1782 application brought by Mangouras. In October 2013, Mangouras and Mare sought discovery for use in the La Coruna trial proceedings. In re Application of Mare Shipping Inc., 13-mc-238 (PKC). The undersigned

3

concluded that this Court had the authority to grant the application pursuant to section 1782(a), but that the applicants did not satisfy the discretionary factors set forth in Intel Corp. v. Advanced Micro Devices, 542 U.S. 241 (2004). See 2013 WL 5761104. Specifically, this Court concluded that because proceedings in Spain were ongoing, the applicants could seek discovery directly from their adversaries through the Spanish tribunal. Id. at *4-5. The United States Court of Appeals for the Second Circuit affirmed, but "note[d] that the various foreign actions cited by plaintiffs as potential avenues for using the sought discovery are continually in flux. The District Court's judgment should in no way be interpreted to bar plaintiffs from renewing the motion if appropriate circumstances arise in the future." Mare Shipping Inc., 574 Fed. App'x at 8.

The respondents have made extensive submissions in opposition to Mangouras's application. This Court heard oral argument from the parties on October 18, 2017.

B. Mangouras's Intention to Submit a Querella Criminal.

Mangouras states that his section 1782 application seeks materials for use in drafting a Querella Criminal for submission in Spain. (8/8/17 Docampo Dec. ¶ 1.) As described by one of Mangouras's Spanish attorneys, a private individual may submit a Querella Criminal to a public prosecutor, setting forth accusations of criminal conduct and making the complainant a party to the proceedings. (Id. ¶ 8.) The Querella Criminal must contain a description of the facts constituting the alleged crime. (Id. ¶ 9.) An instructing judge presides over any ensuing investigation. (Id.) At the investigation's conclusion, if the prosecutor or private accuser concludes that there is evidence to support a crime, trial will commence. (Id. ¶ 14.)

In explaining the basis of his anticipated Querella Criminal, Mangouras asserts that three witnesses at his trial gave false testimony, and that their statements in Spain were in

4

direct contradiction to statements that they made in the ABS Action. According to Mangouras's counsel in Spain, trial witnesses George Alezivos, Jens Jorgen Thuesen and Captain Efstratios Kostazos gave testimony concerning the condition of the *Prestige* "that makes it blatant that they were lying in the US action and/or in the Spanish proceedings." (Id. ¶ 5.) Mangouras's section 1782 application seeks discovery from Spain's counsel in the ABS Action: Starer, and his respective law firms, Squire Patton Boggs LLP ("Squire Patton") and Holland & Knight LLP ("Holland & Knight"), and asserts that they may have information concerning the allegedly false testimony of the three witnesses.

Kostazos, who acted as "Master" of the *Prestige* from June 7, 2002 to September 13, 2002, submitted a declaration in the ABS Action dated October 7, 2009, concerning a one-page fax that he sent on August 15, 2002, approximately three months before the *Prestige* sank. (8/8/13 Soroa Dec. ¶ 26.) In the ABS Action, Kostazos described an inspection of the vessel's interior, steel structure, and engine room, and stated that the inspection prompted him to send a fax to the ABS explaining that an immediate inspection should commence. (Id. ¶ 27.) He specifically stated that he "sent a copy" of a fax describing the *Prestige*'s condition to the ABS and a Greek entity. (Id.) When Kostazos testified in the Spanish criminal action, however, he repeatedly stated that he never sent a fax to ABS, that the documents annexed to his declaration were from his own files, and stated that his testimony in Spain was accurate and that the declaration in the ABS Action had not been prepared according to his instructions. (Id. ¶ 29.) In addition, Kostazos testified in Spain that the fax was two pages in length, as opposed to one page, and signed not by Kostazos but by the vessel's Second Engineer. (Id. ¶ 30.)

Alevizos was retained as an expert witness about vessel classification for Spain in the ABS Action, in which he filed an expert report. (Id. ¶ 38.) Alevizos has stated that he feared

5

criminal prosecution in Spain unless he agreed to testify as an expert in the ABS Action. (Id. ¶ 39.) His expert report in the ABS Action annexed numerous files from Universe Maritime, his former employer, which Alevizos stated he had removed from company files. (Id. ¶ 38.) Universe Maritime apparently had some type of unspecified supervision over the *Prestige*, and Alevizos testified in Mangouras's criminal trial in Spain. (Id. ¶¶ 37-38.) In the Spanish criminal trial, Alevizos testified that he dictated his expert report and did not see all of the attached exhibits. (Id. ¶ 38.) Mangouras also asserts that the documents annexed to Alevizos's report were provided to counsel in the ABS Action, but that they were not delivered to Spanish prosecutors. (Id. ¶ 41.)

Thuesen was a pilot who sailed the *Prestige* at the end of October 2002, shortly before its sinking. (Id. ¶ 42.) In response to Letters Rogatory issued in Spanish proceedings, he stated in May 2004 that he observed no signs of corrosion in the vessel or irregularities in its engine performance. (Id. ¶ 43.) By contrast, in July 2005, Thuesen submitted a declaration for use in the ABS Action, describing the *Prestige* as in "a state of apparent decay," and "in very bad physical condition." (Id. ¶ 44.) In his Spain testimony of January 2013, Thuesen testified that his July 2005 declaration "was almost entirely based on documents shown to him by Spain's New York counsel, Mr. Starer." (Id. ¶ 45.) These materials included photos that purportedly pre-dated extensive repairs made to the *Prestige*. (Id.) Thuesen also stated that his negative impression of the vessel was drawn from "crew statements." (Id. ¶ 46.)

Spanish counsel to Mangouras states that the materials sought from Starer, Squire Patton and Holland & Knight could be probative of whether "some of the key evidence against my client introduced at trial in Spain was knowingly false and based upon false premises . . . ." (7/22/13 Zabaleta Dec. ¶ 6.)

6

### C. Mangouras's Application to the Court of Human Rights.

In addition to the Querella Criminal, Mangouras has filed a sealed application to the Court of Human Rights, which appeals his conviction in the Spanish courts on the grounds that it violated his right to a fair trial and his right to the protection of property, as guaranteed by the European Convention on Human Rights. (8/8/17 Docampo Dec. ¶ 16.) Mangouras's counsel states that the Spanish government failed to disclose the results of expert inspections into the conditions of the wreckage of the *Prestige*, despite numerous requests and judicial orders that it do so. (Id.) According to Mangouras, the Court of Human Rights does not have a fact-disclosure or discovery stage, and the applicant's submissions must include all documents that he considers relevant. (Id. ¶ 20.)

In support of his application to the Court of Human Rights, Mangouras seeks materials from Charles Cushing and his affiliated naval architecture, marine engineering and transportation consulting firm, CR Cushing & Co. ("CR Cushing"). Spain retained Cushing as an expert witness in both the ABS Action and in the Spanish proceedings. (6/6/17 Docampo Dec. ¶ 9.) Cushing testified about his observations as to the structural conditions of the *Prestige*. (Id. ¶¶ 8-11.) Cushing participated in undersea inspections of the *Prestige* wreck, and was involved in various thickness measurements of the vessel's sideshell plating. (Id. ¶¶ 10-11.) Mangouras's counsel states that Cushing's investigation was not disclosed to Mangouras or his attorneys. (Id. ¶ 11.) While trial was underway, counsel to Spain disclosed for the first time 24 DVDs related to inspection of the wreckage, but "very few" documents related to the inspections or measurements have been disclosed, including the results of thickness measurements. (Id. ¶¶ 12-13.)

According to Mangouras's counsel in Spain, the structural condition of the *Prestige* was a central issue in the criminal trial and the decision issued by the Supreme Court of Spain. Counsel cites to passages from the Spanish Supreme Court that describe structural problems with the vessel. (8/8/17 Docampo Dec. ¶ 24.) That attorney argues that Mangouras's rights to a fair trial would have been violated if the Spanish government failed to disclose relevant evidence concerning the vessel's condition, including any thickness measurements. (8/8/17 Docampo Dec. ¶¶ 23-24.)

DISCUSSION.

I. <u>Overview of Section 1782.</u>

A district court may, "upon the application of any interested person," order a person within its jurisdiction to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28 U.S.C. § 1782(a).

For an application to succeed, a section 1782 petitioner must first satisfy three mandatory threshold factors. These factors are whether "'(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.'" <u>Mees v. Buiter</u>, 793 F.3d 291, 297 (2d Cir. 2015) (quoting <u>Brandi-Dohrn v. IKB Deutsche Industriebank AG</u>, 673 F.3d 76, 80 (2d Cir. 2012)); <u>accord</u> <u>In re Accent Delight Int'l Ltd.</u>, 869 F.3d 121, 128 (2d Cir. 2017).

If the applicant satisfies the mandatory factors, the district court then weighs four discretionary factors articulated by <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241,

264-65 (2004). "These are: (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264-65).

The Court's exercise of discretion "'is not boundless,'" and must be guided by the goals of "'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" Mees, 793 F.3d at 297-98 (quoting Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83-84 (2d Cir. 2004)).

II.   Mangouras Satisfies the Mandatory Criteria of Section 1782.

   A. The Persons from Whom Discovery Is Sought Can Be Found in this District.

Cushing is employed at CR Cushing, which is located on Vesey Street in Manhattan. (See 17-mc-186, Docket # 14-2.) Starer is an attorney at Squire Patton, which has its offices at Rockefeller Plaza in Manhattan. (See Docket # 1.) Prior to his affiliation with Squire Patton, Starer was an attorney at Holland & Knight, which has offices on West 52nd Street in Manhattan. (Id.) To the extent that the respondents argue that the Kingdom of Spain is the real subject of Mangouras's subpoenas, that argument is meritless for the reasons explained in this Court's 2013 decision, which observed that the persons from whom testimony and

documents were sought "indisputably reside (or are found) in the district." In re Mare Shipping, 2013 WL 5761104, at *3 (quotation marks and alteration omitted).

The Court concludes that Mangouras seeks discovery from persons and entities that can be found in this District.

B. Mangouras Seeks Discovery "For Use" in a Foreign or International Proceeding.

"[D]iscovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement." Mees, 793 F.3d at 298. To be "for use," the applicant must show that the materials "will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail." Id. A showing of "necessity" is therefore not the touchstone of analysis, and courts should be reluctant to parse the requirements of foreign law in an attempt to predict how much weight would be placed on the evidence sought. See id. at 298-99.

Further, where an applicant has not yet initiated a foreign proceeding, discovery is available when the materials may help the applicant either to plead or to prove the anticipated claims. See id. at 299. Indeed, "the foreign proceeding need not be pending, so long as it is 'within reasonable contemplation.'" Id. at 299 (quoting Intel, 542 U.S. at 259). In In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings, 773 F.3d 456, 457 (2d Cir. 2014), the Second Circuit concluded that discovery was available to "a Swiss criminal complainant" who sought the production of documents "to provide to a Swiss investigating magistrate overseeing a criminal inquiry related to a Bernard Madoff 'feeder fund' in Switzerland." The Second Circuit described such an application and inquiry as "exactly the type of proceeding" that section 1782 is "intended to reach." Id. at 461. See also In

re Accent Delight, 869 F.3d at 128-35 (criminal complainant made showing that the materials were "for use" in investigation of fraud claims). By contrast, applicants do not satisfy the "for use" requirement if they are not "in a position to use the evidence they seek through their § 1782 application in those ongoing foreign proceedings." Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P., 798 F.3d 113, 120 (2d Cir. 2015).

Mangouras has filed an application with the Court of Human Rights, which asserts that the Spanish proceedings deprived him of the right to a fair trial and to the protection of property. (8/8/17 Docampo Dec. ¶ 16.) He has made a showing that the discovery he seeks would be "for use" in that proceeding.

As to Mangouras's anticipated Querella Criminal, Docampo states that evidence of contradictory statements made by Kostazos, Alevizos and Thuesen in the ABS action and in Spanish proceedings are relevant to proving the crime of providing false testimony. (Id. ¶¶ 29-37.) Docampo states that the purpose of the application for discovery of Squire Patton and Starer "is to obtain additional evidence necessary to support and ultimately prove" that the three witnesses supplied false evidence. (Id. ¶ 30.) Mangouras has made a showing that the filing of a Querella Criminal is within "reasonable contemplation," and, consistent with Mees, Accent Delight and In re Application, that materials obtained in discovery would be "for use" in drafting and proving allegations of criminal conduct.

In opposition, the respondents make much of Spanish secrecy laws and the substantive merits of Mangouras's post-conviction filings. Mangouras advances a very different understanding of these issues. But Mees cautions United States courts against using a "necessity" requirement and engaging in "'speculative forays into legal territories unfamiliar to federal judges . . . .'" 793 F.3d at 299 (quoting Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d

11

1095, 1099 (2d Cir. 1995)). Mees described predictive rulings on the merits of foreign proceedings as "costly, time-consuming, and inherently unreliable," and noted that "even in the context of our own laws, the question of who will ultimately prevail on what evidence can usually only be a subject of speculation at the pleading stage." 793 F.3d at 299; see also Euromepa, 51 F.3d at 1099 ("We think that it is unwise – as well as in tension with the aims of section 1782 – for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law."). And unlike the applicants in Certain Funds, 798 F.3d at 120-22, Mangouras is in a position to incorporate and use the information that he seeks, even if it is ultimately deemed unpersuasive or even inadmissible by foreign tribunals.

The Court therefore concludes that Mangouras's application seeks evidence that is "for use" in foreign proceedings.

### C. Mangouras Is an Interested Person.

Finally, a section 1782 applicant must be an "interested person." The applicant is an interested person if he or she "participation rights" in proceedings. Intel, 542 U.S. at 256; see also Certain Funds, 798 F.3d at 119 (observing in dicta that Intel did not establish a minimum threshold for identifying an interested person, but adding that criteria may include "an established right to provide evidence and have the party consider it," "a recognized relationship, such as that of an agent and principal" or "certain procedural rights" afforded to a creditor).

Mangouras seeks materials that relate to the criminal proceedings against him in Spain. His anticipated Querella Criminal is directed toward purported crimes that occurred in those proceedings, and his application to the Court of Human Rights seeks review of the

proceedings. He is an interested person "within any fair construction of that term." Intel, 542 U.S. at 256.

  III.  Mangouras Satisfies Intel's Discretionary Criteria.

    A. Whether the Respondent Is a Party to the Foreign Proceedings.

The first Intel factor looks to whether the person from whom discovery is sought is a participant in the foreign proceeding. 542 U.S. at 264. If the respondent is a participant, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Id.

In its 2013 decision, this Court concluded that the applicants, "for all intents and purposes, seek discovery from Spain" by way of its agents in New York. In re Mare, 2013 WL 5761104, at *4. The Court concluded that "the need for section 1782 discovery [was] less apparent" because the applicants could seek discovery of Spain through the Spanish courts. Id. at *5.

The current procedural posture is different. The Querella Criminal would not be asserted against Spain, but against third-party witnesses. (8/8/17 Docampo Dec. ¶ 7.) Spain therefore would not be a party to any Querella Criminal proceeding or investigation initiated by Mangouras.

Mangouras's application to the Court of Human Rights may become an adversarial proceeding against Spain. (8/8/17 Docampo Dec. ¶¶ 21-22.) According to Mangouras's Spain-based counsel, the Court of Human Rights does not have any type of discovery or fact-disclosure proceeding, and Spain would not be required to provide documentation in opposition to any filing by Mangouras. (Id. ¶ 20.) However, even if there were some type of mechanism for factual discovery or disclosure, the Second Circuit has

emphasized that section 1782 does not require an applicant to exhaust foreign discovery channels. See Mees, 793 F.3d at 303-04; In re Catalyst Managerial Servs., DMCC, 680 Fed. App'x 37, 40-41 (2d Cir. 2017) (affirming section 1782 disclosure even when production may be available from UK tribunal) (summary order). Therefore, even assuming arguendo that the Court of Human Rights has a disclosure or discovery mechanism, section 1782 production is appropriate if it advances the "twin purposes" of efficiency and encouraging foreign countries to provide assistance to U.S. courts. Id. at 41 (citing In re Gianoli Aldunate, 3 F.3d 54, 62 (2d Cir. 1993)). In this instance, Spain's possible future participation in the Court of Human Rights proceedings is not an impediment to section 1782 relief, because even if a disclosure mechanism is involved, a grant of Mangouras's application advances the statute's "twin purposes."

Spain is potentially a party to the proceeding before the Court of Human Rights, but would not be a party to the Querella Criminal. On balance, the Court concludes that the first Intel factor tips slightly in favor of Mangouras's application.

B. The Nature of the Foreign Proceedings.

The second Intel factor weighs "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264. "[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." Euromepa, 51 F.3d at 1100.

The respondents again emphasize that Spanish secrecy laws would not permit judicial consideration of the materials that Mangouras seeks. But "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign

14

tribunal would reject evidence obtained with the aid of section 1782." Euromepa, 51 F.3d at 1100. Absent "a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures," a district court should lean toward disclosure. Id.

The Court is not aware of any authoritative statement indicating that either the Spanish courts or the Court of Human Rights would be unreceptive to information obtained through the assistance of United States courts. The applicant and the respondents have offered conflicting authority as to the application of Spanish secrecy laws, and, this Court is not well-positioned to predict how Spanish tribunals would ultimately resolve that question. The second Intel factor therefore weighs in favor of granting the application.

C. Whether the Application Circumvents Foreign Proof-Gathering Restrictions.

The third Intel factor considers "'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 265. Mees has noted that this factor does "not 'authorize denial of discovery pursuant to § 1782 solely because such discovery is unavailable in the foreign court, but simply . . . allow[s] consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application.'" 793 F.3d at 303 (quoting In re Application for an Order Permitting Metallgesellschaft AG to take Discovery, 121 F.3d 77, 79 (2d Cir. 1997)). Mees also "emphasize[d] that the availability of the discovery in the foreign proceeding should not be afforded undue weight." Id.

The respondents assert that Mangouras could have previously sought these materials in the Spanish criminal proceedings. (See Docket # 35 at 33-35.) Mangouras's counsel states that there was no reason to seek discovery as to Kostazos, Alevizos and Thuesen

until late in the trial, when Kostazos "testif[ied] in a way that was entirely contrary" to his statements in the ABS action in New York. (8/23/17 Soroa Dec. ¶ 4.) His counsel also acknowledges that Mangouras "asked the Spanish Court for a great deal of documents from the New York proceedings," but that early in the criminal case, the Spanish courts denied such requests, "and it was evident that a negative response would be received from it in all similar petitions." (Id. ¶ 5.)

Although Mangouras now seeks discovery that was denied to him in Spanish criminal proceedings, the current application is brought for a different purpose and is related to use in the anticipated Querella Criminal and the application to the Court of Human Rights. As discussed, Querella Criminal is a collateral proceeding separate from Mangouras's underlying criminal trial, through which a private citizen files a complaint alleging criminal conduct. Mangouras's counsel has stated that there is no disclosure or discovery mechanism in the proceedings before the Court of Human Rights. Mangouras's discovery requests during his criminal proceedings were brought in a different context for a different purpose.

These circumstances also differ from those surrounding the prior section 1782 application of Mangouras and Mare. In reviewing that application, the Second Circuit noted that the "potential avenues for using the sought discovery are continually in flux," and that the denial of discovery at that time "should in no way be interpreted to bar plaintiffs from renewing the motion if appropriate circumstances arise in the future." Mare Shipping, 574 Fed. App'x at 8. Mangouras now seeks to use discovery before different tribunals and for different purposes. Thus, while the Court affords some weight to the Spanish court's earlier denial of Mangouras's similar discovery requests, the changed circumstances of his application weigh in favor of disclosure. Cf. In re Catalyst, 680 Fed. App'x at 41 (section 1782 discovery did not circumvent

16

foreign court's previous denial of discovery when the foreign court ruled "only in the context of [a] stay litigation" and did not "preclude[]" an application "in any later context . . . .").

The circumstances of Mangouras's post-conviction filings in Europe are different from those of his prior applications in Spain and the United States. He does not now seek to circumvent the prior rulings of the Spanish courts. The third Intel factor therefore weighs in favor of granting the application.

D. Whether the Application Is Unduly Intrusive or Burdensome.

The fourth Intel factor considers whether the applicant's request is "unduly intrusive or burdensome." 542 U.S. at 265. An application may be unduly burdensome if it seeks only privileged materials. See, e.g., In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP, 60 F. Supp. 3d 419, 428 (S.D.N.Y. 2014) (denying request when applicants sought expansive categories of materials in hopes of "uncovering stray probative but unprivileged documents . . . .") (Engelmayer, J.). A district court also may deny an application "if it is sought for the purpose of harassment." Gorsoan Ltd. v. Bullock, 652 Fed. App'x 7, 9 (2d Cir. 2016).

Mangouras seeks broad document discovery into the work of Starer, Patton Squire and Holland & Knight as it relates to Kostazos, Thuesen and Alevizos. His document requests include "[a]ny and all correspondence, notes, memoranda, time records, bills and other billing records, and/or any and all other documents or records, in any form whatsoever, which in any way relate to or concern" Kostazos, Thuesen and Alevizos. (Docket # 1.) He also specifies similar materials for the three witnesses that "in any way relate to the evidence" they provided "in either the New York or Spanish Actions" regarding the *Prestige*. (Id.)

17

As to Cushing and CR Cushing, Mangouras seeks "plans, notes," "records," "communications" and "other evidence" concerning inspections and thickness measurements that were made of the *Prestige*, including notes of meetings with Spanish officials. (See 17-mc-186 Docket # 14-2.)

While these requests are broadly worded, the burden in their production can be minimized with well-tailored search terms. This Court will continue to preside over this action and can limit the scope of Mangouras's application if the respondents make a showing of undue burden.

Further, at the oral argument of October 18, 2017, counsel to respondents orally represented that approximately 300 responsive documents have been identified, and that respondents have designated 104 of them as falling within the attorney-client privilege. (Tr. 72.) Respondents' counsel also orally represented that a privilege log has been drafted for those 104 documents. (Tr. 83.) The Court has ordered respondents to produce the privilege log to the petitioner, and has directed the petitioner to identify ten of the privileged documents for in camera review. (Tr. 83-84.) The volume of responsive and privileged materials is not unduly burdensome. Should respondents come forward in the future with a showing that the production is burdensome, the Court has the authority and discretion to narrow the scope of Mangouras's requests.

CONCLUSION.

For the reasons explained, the motion to compel discovery pursuant to section 1782 is GRANTED. (Docket # 26.) The Clerk is directed to terminate that motion and the related letter motions. (Docket # 10, 17, 19, 23.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 30, 2017